RESERVE LIFE INSURANCE COMPANY, a corporation, Appellant,

v.

Donald E. MARR, as Executor of the Estate of Mary I. Marr, Deceased, Appellee.

No. 15721.

United States Court of Appeals Ninth Circuit.

April 23, 1958.

Rehearing Denied May 27, 1958.

G. J. Silvernale, Jr., Paine, Lowe, Coffin & Herman, Spokane, Wash., for appellant.

Fielding H. Ficklen, Spokane, Wash., for appellee.

Before ORR, CHAMBERS and BARNES, Circuit Judges.

ORR, *Circuit Judge*.

Effective May 4, 1954, appellant Reserve Life Insurance Company, hereafter company, issued two Insurance Policies to one Mary I. Marr, hereafter insured, wherein the company agreed to pay certain therein named hospital expenses if and when incurred by insured. She is now deceased. Appellee Donald E. Marr is administrator of her estate.

At age 70 the insured suffered a stroke and on her doctor's orders was taken to the Jane O'Brien Hospital in Spokane, Washington. Her condition stabilized after several weeks, but she remained partially incapacitated physically and required medicinal and nursing care. Insured was hospitalized for 14 months, receiving medicinal treatment and care by her physician. She made claim for the medical and hospital expenses incurred.

The company denied the claim on the ground that the hospital in which insured was treated did not meet the standards set up in the policies. Suit was brought and a judgment rendered in favor of appellee.

The two policies contained identical definitions of the word "hospital" as used in the wording of a condition therein to the effect that in order to recover the insured must "be necessarily confined within a recognized hospital" (policy J) or "be necessarily confined within a recognized hospital (as defined in part 2 hereof)" (policy A). That definition is as follows:

> "The word 'hospital' wherever used in this policy means an institution which has a laboratory, X-ray equipment and an operating room where major surgical operations may be performed, and which maintains permanent and full time facilities for the care of over-night resident patients under the supervision of a licensed Doctor of Medicine or Osteopathy and which has a Graduate Registered Nurse always on duty."

The trial court found that the Jane O'Brien Hospital in which insured was confined was licensed by the State of Washington to maintain 61 beds and had a daily average of 50 patients for the year in question. At the time of the insured's admission to the hospital, it was licensed as a "nursing home". It is now licensed as a "psychiatric hospital" and was so licensed for several years prior thereto. It had a registered nurse on duty at all times, X-ray facilities, and full-time facilities for overnight resident patients, for administering oxygen, and for taking blood samples.

That the above enumerated facilities were furnished is not contested, but it is contended that further requirements contained in the policy definition were not met, in that the hospital was not *"an institution which has a laboratory."*

There was a laboratory on the premises; laboratory test work however was regularly sent to an independent laboratory under a contractual arrangement. It is conceded that these facilities so utilized were adequate. But, argues the company, no matter how available and efficient the facilities were, they must have been under the same roof or within an integrated hospital facility in order to meet the definition contained in the policy. The policies do not specifically require that the laboratory be within the confines of a building or buildings owned and operated by the hospital as an integrated whole.

There was no operating room on the premises where major operations could be performed, but an arrangement existed whereby the operating room facilities of the Sacred Heart Hospital, one and one-half blocks away, were available if the patient's doctor wished to use them.

Here again we find no requirement in the policies that the operating room be on the premises or within the confines of a building or buildings operated by the hospital as an integrated whole. McKinney v. American Security Life Ins. Co., La.App.1954, 76 So.2d 630.

There is no requirement in the policies that the insured be confined in a "general" hospital, nor is there any exclusion from the term "hospital" of a psychiatric or nursing hospital, as there was in Rew v. Beneficial Standard Ins. Co., 1952, 41 Wash.2d 577, 250 P.2d 956, 35 A.L.R.2d 891, relied on by the company.[1] These policies were not limited to surgical benefits and covered costs of "hospital confinement * * * (b) resulting from sickness. * * *" Reference was specifically made therein to "any disease of the heart or circulatory system," and the coverage here sued upon was the provision for expenses of a "Hospital Room, including meals and *general nursing care.*" (Italics supplied).

---

1. There is instead only a specific exclusion of "hospitalization for nervous or mental disorders, rest cure or alcoholism."

Another argument concerning the definition is directed toward the requirement that the hospital maintain "permanent and full time facilities for the care of over-night resident patients under the supervision of a licensed Doctor of Medicine or Osteopathy." Appellant urges that this requires supervision by a Doctor of the hospital facilities rather than of the patients, so that administrative control of the hospital would be by licensed doctors. The Jane O'Brien Hospital did not have a doctor as its director but was managed by a person who had had over eight years experience in hospital management work, with pre-medical training and two years of medical school, and experience in operating a medical laboratory.

It is apparent that the portion of the definition here relevant is ambiguously stated, so that the supervision phrase can be read to modify either the "facilities" themselves or the "patients" using such facilities. If read the latter way, there was admittedly sufficient compliance, for each patient was under the care of his own physician. It may well be that higher standards of operation of a hospital could be insured if the hospital is administered by a licensed doctor. The policies in question do not unequivocally contain such a requirement, and the ambiguity was properly construed by the trial court in favor of the policy holder. McCarty v. King County Medical Service Corp., 1946, 26 Wash.2d 660, 175 P.2d 653; Dorsey v. Strand, 1944, 21 Wash.2d 217, 222, 150 P.2d 702, 705; Doke v. United Pacific Ins. Co., 1942, 15 Wash.2d 536, 131 P.2d 436, 135 P.2d 71.

■■ The trial court found that the facilities furnished substantially complied with the terms of the policy. A policy will be liberally construed in favor of the object to be accomplished and conditions and provisions therein will be strictly construed against the insurer. Jack v. Standard Marine Ins. Co., 1949, 33 Wash.2d 265, 205 P.2d 351, 8 A.L.R.2d 1426. Undoubtedly the object to be accomplished by the insertion in the policy of a statement of the facilities to be available was to meet the standard of a hospital which the company determined would guarantee to the policy holders a high standard of care when hospitalized. This was undoubtedly on the theory that the better the care the sooner the patient would be released and thereby minimize the expense to the company. If such be the object to be accomplished, what difference would it make to a recovery whether the named facilities were under one management so long as the care was expertly provided and readily at hand? In so deciding we are not disregarding plain and explicit language, but are holding that a liberal construction of the language of the policies supports the finding of the trial court that the facilities furnished by the hospital in which the insured was confined were in substantial compliance with the definition of a "hospital" contained in the policy.

■ Appellant attacks a finding of the trial court that the insured was "necessarily confined" within the meaning of the policy. It is not disputed that the insured's confinement was under the direction of her doctor, nor is it shown that he improperly so directed, or that her confinement was not the result of a sickness covered by the terms of the policy. This contention is essentially the same as that made to the effect that the policy covers only "general hospital" type confinements, with which we have heretofore dealt.

Affirmed.