18556

R. W. PATTERSON, Appellant, v. AETNA LIFE INSURANCE COMPANY, Respondent

(149 S. E. (2d) 915)

*Messrs. McGowan, McDonald & Keller,* of Florence, *for Appellant,*

*Messrs. Wright, Scott, Blackwell & Powers,* of Florence, *for Respondent,* 

August 29, 1966.

BRAILSFORD, Justice.

Plaintiff's ten year old son, a cerebral palsy victim as the result of natal injuries to his brain, was a patient in The Asheville Orthopedic Hospital, Inc., Asheville, North Carolina, receiving physical therapy, occupational therapy and speech therapy, from February 21, 1964 to March 31, 1964. As plaintiff's dependent, the son was an insured under a group health and accident insurance policy issued by the defendant, Aetna Life Insurance Company, on April 5, 1962, covering the members and employees of the firm of Cormell-Streett and Patterson, of which plaintiff is a member. This action on the insurance policy was brought to recover expenses incurred by plaintiff for his son's care and treatment as a patient at Asheville. At the conclusion of the evidence, the circuit judge withdrew the case from the jury and granted judgment for the defendant upon the ground that the Asheville institution did not qualify as a hospital within the meaning of the relevant section of the policy; hence the expenses sued for were not covered thereby. The plaintiff has appealed on exceptions which raise a single issue, to wit: *Whether The Asheville Orthopedic Hospital qualifies as a hospital as that term is defined in the insurance policy?* If so, the plaintiff is entitled to recover. If not, judgment for the defendant must be affirmed. We quote the pertinent policy provision:

"The term 'hospital' means only an institution which meets fully every one of the following tests, namely, (a) it is primarily engaged in providing—for compensation from its patients and on an inpatient basis—diagnostic and therapeutic facilities for the surgical and medical diagnosis, treatment, and care of injured and sick persons by or under the supervision of a staff of physicians, and (b) it continuously provides twenty-four hour a day nursing service by registered graduate nurses, and (c) it is not, other than incidentally, a place for rest, a place for the aged, a place for drug addicts, a place for alcoholics, or a nursing home."

W. H. Byrd, the executive officer in charge of The Asheville Orthopedic Hospital, was called as a witness for plaintiff. We learn from his testimony that the institution is a children's hospital which specializes in orthopedic, speech and hearing problems. It has a nursing staff with registered nurses on duty at all times. It is under the supervision of a staff of physicians, all of whom are in private practice. These physicians maintain their offices in the City of Asheville, and are also on the staffs of other hospitals in the area. The hospital is equipped to administer physical therapy, occupational therapy, speech therapy and hearing therapy, and to provide nursing and medical care. It also has a craft program and special educational classes. The latter are conducted by the public school system of the county for both elementary and high school students.

All patients are "admitted" by their doctors and each doctor is responsible for prescribing for the care and treatment of his patient. No surgery is performed in the hospital which does not have an operating room or provide any other facilities for surgical treatment. Prospective surgery patients are not admitted as such. If the need for surgery arises or becomes apparent while a child is a patient at Asheville Orthopedic, his doctor has him transferred to nearby Memorial Mission Hospital, or infrequently, to some other hospital where surgical facilities are available and where the doctor is qualified to have patients admitted.

There is no contractual arrangement between The Asheville Orthopedic Hospital and any other hospital for providing surgical facilities for its patients. On transfer to another hospital for surgery, a child's parent or guardian assumes a direct contractual relationship with that institution, and is directly responsible to it for all charges incurred, to the same extent as though the child had never been admitted to Asheville Orthopedic. In short, so far as the record discloses, a patient of The Asheville Orthopedic Hospital requiring surgery is admitted to Memorial Mission Hospital, or any other hospital of the area, by the same means and on the same terms as any member of the public, and not through any contract or arrangement between such hospital and Asheville Orthopedic.

We have not undertaken to state in detail all of the testimony of this witness as to the facilities and services provided by Asheville Orthopedic because the challenge to its qualification as a hospital, within the terms of the policy, rests solely upon its failure to provide surgical facilities.

The policy provides that an institution may qualify as a hospital only if it meets *fully every one of* the tests specified in the definition quoted above. The terms *fully* and *every one* are words of common usage with well understood meanings which require no elucidation. The hard core of test (a) is that in order to qualify, an institution must be primarily engaged in providing facilities for surgical *and* medical treatment of injured and sick persons under the supervision of a staff of physicians. To provide facilities for medical treatment, but none for surgery, is to meet the test only in part, which is insufficient for qualification as a hospital under the explicit language of the contract. Therefore, the issue on appeal must be resolved in favor of the defendant under ordinary principles of contract law as applied to insurance policies. We quote from *Inman et al. v. Life Ins. Co. of Virginia,* 223 S. C. 98, 74 S. E. (2d) 423:

"* * * in cases where there is no ambiguity, contracts of insurance, like other contracts, must be construed according

to the terms which the parties have used, to be taken and understood in their plain, ordinary, and popular sense. *Bolen v. Capital Life & Health Insurance Company,* 208 S. C. 345, 38 S. E. (2d) 79. And it is said in *Newell & Company v. American Mutual Liability Company,* 199 S. C. 325, 19 S. E. (2d) 463, 466, that 'If the intention of the parties is clear, the courts have no authority to change the contract in any particular. * * * The rule of strict construction against the insurer does not apply where the language used in the policy is so plain and unambiguous as to leave no room for construction. * * * Nor does the rule of strict construction authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists. The judicial function of a court of laws is to enforce an insurance contract as made by the parties, and not to re-write or to distort, under the guise of judicial construction, contracts, the terms of which are plain and unambiguous. * * *' " 223 S. C. 101, 102, 74 S. E. (2d) 424.

These apt principles have frequently been applied by this court to a variety of policy provisions. West's South Carolina Digest, Insurance, —146, revised topic, 146.-146.8. We have no decision involving a contract restricting coverage to expenses incurred while confined in a "hospital" as that term is defined in the policy. Appellant cites and relies upon two cases from other jurisdictions, in both of which recovery was allowed on the ground that the institutions in question substantially qualified as hospitals under the policy definitions of that term. *Reserve Life Ins. Co. v. Marr,* 9 Cir., 254 F. (2d) 289; *McKinney v. American Security Life Ins. Co.,* La. App., 76 So. (2d) 630. We have carefully considered these decisions and others, which have come to our attention, in which the defense that the institution involved did not qualify as a hospital under a policy definition was disallowed. *Reserve Life Ins. Co. v. Jansen,* Tex. Civ. App., 357 S. W. (2d) 770; *Scott v. Guardian Life Ins. Co. of America,* Tex. Civ. App., 397 S. W. (2d) 463;

*Travelers Insurance Company v. Esposito,* Fla. App., 171 So. (2d) 177; Annotation, 35 A. L. R. (2d) 897, supplemented in 4 Later Case Service 296. None of these decisions questions the legality of a policy provision of this nature and because of differences in policy terminology and in the facts involved, none of them is persuasive on the issue involved here. For example, none of the policies required that every one of the qualifying conditions be *fully* met for an institution to qualify as a hospital, as does the policy with which we deal. In *McKinney, supra,* the institution in question did not have *x*-ray equipment as required. However, it had the use of such equipment by contract with others and this was held to be sufficient. *Marr, supra,* the only other decision cited by appellant, turned on substantially the same point. The court found that laboratory work was "regularly sent to an independent laboratory under a contractual arrangement"; and that "an arrangement existed whereby the operating room facilities of the Sacred Heart Hospital, one and one-half blocks away, were available if the patient's doctor wished to use them." The court held this to be substantial compliance with the requirement that a hospital must have a laboratory and an operating room. In *Esposito, supra,* the court pointed out "that there was an affiliation with another hospital for diagnostic and surgical facilities," and held that "[s]uch an arrangement * * * was sufficient compliance with the requirements to have facilities for diagnosis and operative surgery", citing *Marr, supra. Scott, supra,* involved the same institution and followed *Esposito.*

In *Prudential Ins. Co. of America v. Cline,* 51 Tenn. App. 636, 371 S. W. (2d) 158, the policy definition was substantially the same as the one here, but for the omission of the word "fully". The court held that the institution might properly have been held to be a hospital, absent the policy definition with which it did not comply. In denying recovery, the court applied ordinary contract principles to which we subscribe.

"The language used in the insurance certificate here sued on is simple, clear, and unambiguous. Consequently, the principle. of construction of insurance policies that they must be construed most strongly against the insurance company, does not come into operation. In such situation, it is the duty of the courts to apply the words used in their ordinary meaning, without favoring either party by construction of same. * * *" 371 S. W. (2d) 161.

Our conclusion results in the enforcement of this contract according to its terms and involves no hardship on plaintiff. His son's unfortunate condition manifested itself long before the policy was issued. As a member of the firm purchasing the insurance, plaintiff was in a position to negotiate for the best terms obtainable in the light of this condition. Presumably he did so, and obtained valuable coverage which the defendant does not repudiate. It merely asserts a well founded policy defense to this particular claim.

Affirmed.

Moss, C. J., Lewis and Bussey, JJ., and Lionel K. Legge, Acting J., concur.