433 P.2d 303

**RESERVE LIFE INSURANCE COMPANY, Appellant,**

v.

**Edyth MATTOCKS, a widow, Appellee.**

**No. 2 CA–CIV 388.**

Court of Appeals of Arizona.

Nov. 13, 1967.

Rehearing Denied Dec. 18, 1967.

Review Denied Jan. 16, 1968.

Holesapple, Conner, Jones, McFall & Johnson, by G. Marshall Jones, Tucson, for appellant.

Krotenberg, Laber & Morrow, by Stanley Krotenberg, Tucson, for appellee.

HATHAWAY, Chief Judge.

Is the Elks Hospital a "hospital" as defined in an insurance policy issued by the appellant? This is the sole question presented by this appeal.

Edyth Mattocks, a widow, hereinafter referred to as plaintiff, instituted against Reserve Life Insurance Company, hereinafter referred to as defendant, an action for damages for alleged breach of contract by the defendant. The contract was a Hospital Surgical Expense Insurance Policy which provided certain coverage to the plaintiff and her deceased husband. The husband, prior to his death, was confined to the Arizona State Elks Association Hospital, Tucson, Arizona, for certain periods in 1965 and 1966.

The only issue was whether the plaintiff was entitled to recover at all under the terms of the policy, the parties having agreed upon the sum recoverable if this issue were decided in plaintiff's favor. On the basis of the pleadings, affidavits, and depositions in the record, the lower court granted the plaintiff's motion for summary judgment and entered judgment in accordance therewith. This appeal followed.

The defendant's position is that the lower court erred in ruling as a matter of law that the Elks Hospital was a hospital within the policy definition:

> "The word 'hospital' whenever used in this policy means *an institution which has a laboratory, X-ray equipment and an operating room* where major surgical operations may be performed, and which maintains permanent and full time facilities for the care of overnight resident patients under the supervision of a licensed Doctor of Medicine or Osteopathy and which has a Graduate Registered Nurse always on duty." (Emphasis supplied.)

The Elks Hospital, at the times in question, did not have a laboratory, x-ray facilities or an operating room. In 1963, however, the Elks Hospital had entered into an "Affiliation Agreement" with St. Mary's Hospital which provided for their affiliation "for the purpose of providing to the patients of the Elks Hospital accredited diagnostic, therapeutic, and surgical services":

> *"Radiological Services:* The St. Mary's Hospital will permit all x-ray services for the patients of the Elks Hospital as prescribed by the attending physicians. The Radiologist will render radiological consultation reports to the Elks Hospital.

> *"Pathological and Clinical Laboratory Services:* The St. Mary's Hospital will perform all clinical laboratory tests upon the patients of the Elks Hospital as prescribed by the attending physician. Pathological consultation services will also be available. The Pathologist will render all laboratory test reports, autopsy

protocols, and pathological consultation reports to the Elks Hospital.

"*Surgical Services:* All inpatients of the Elks Hospital requiring surgery as determined by the attending physician and/or surgical, consultation will be referred to and transferred to the St. Mary's Hospital for the necessary performance of the surgery. When in the judgment of the attending physician the patient has recovered to the extent where care can be again continued in the Elks Hospital the patient shall be transferred back to the Elks Hospital."

The plaintiff's position is that the availability of St. Mary's Hospital's facilities satisfied the policy definition and the defendant argues contra. There is respectable authority from other jurisdictions to support each party's position.

The Texas Supreme Court, in the recent case of Guardian Life Insurance Company of America v. Scott, 405 S.W.2d 64 (1966), held that "having access to" was not the equivalent of "to have." The policy therein under consideration defined a hospital as an institution which, among other requirements, "has facilities * * * including facilities for diagnosis and major surgery." The institution in which the plaintiff was confined for treatment of a nervous disorder had no facilities for x-ray, laboratory work or major surgery. However, the administrator of the institution stated in his deposition that the institution had access to the facilities of one or more of the hospitals with which the institution's doctors were associated. The Texas court held that this did not satisfy the policy definition for a hospital.

In the case of Patterson v. Aetna Life Insurance Company, 248 S.C. 374, 149 S.E. 2d 915 (1966), the insurance policy under consideration recited:

"The term 'hospital' means *only* an institution which *meets fully* everyone of the following tests, namely, (a) it is primarily engaged in providing—for compensation from its patients and on an inpatient basis—diagnostic and therapeutic facilities for the surgical and medical diagnosis, treatment, and care of injured and sick persons * * *." (Emphasis supplied)

In *Patterson,* the evidence disclosed that no surgery was performed in the hospital sought to be brought within the purview of the policy. It had no operating room and provided no other facilities for surgical treatment. Prospective surgery patients were not admitted at all. If the need for surgery arose subsequent to admission, the patient's doctor transferred the patient to another hospital. Unlike the Elks Hospital, there was no contract arrangement with another hospital for providing surgical facilities. In holding that the plaintiff who was seeking to recover hospital benefits under this policy had not been confined in a "hospital" within the policy definition, the court relied on the fact that the policy provision was clear that every test as therein set forth must be *fully* met.

Support for the plaintiff's position and the trial court's ruling is found in the cases of Travelers Insurance Company v. Esposito, 171 So.2d 177 (Fla.App.1965); McKinney v. American Security Life Insurance Company, 76 So.2d 630 (La.App. 1955); and Reserve Life Insurance Company v. Marr, 254 F.2d 289 (9th Cir. 1958), cert. den., 358 U.S. 839, 79 S.Ct. 63, 3 L.Ed. 2d 74.

The *Marr* case involved interpretation of the subject policy definition. Just as here, it was not contested that the enumerated facilities were furnished. Although there was a laboratory on the premises, laboratory test work was sent to an independent laboratory under a contractual arrangement. There was no operating room on the premises where major operations could be performed, but an arrangement existed whereby the operating room facilities of a nearby hospital were available if the patient's doctor wished to use them.

In the *McKinney* case, "hospital" was defined as an institution which, inter alia:

"* * * has a laboratory, X-ray equipment and an operating room where

major surgical operations may be performed * * * and which has a Graduate Registered Nurse always on duty."

No x-ray equipment was on the premises of the institution involved, but adequate x-ray service was available. The graduate registered nurse was not always on duty but was on duty for a major portion of the day.

In the *Esposito* case, the policy definition of "hospital" included:

"It is engaged primarily in providing medical care and treatment of sick and injured persons on an inpatient basis at the patient's expense and maintains diagnostic and therapeutic facilities for surgical and medical diagnosis * * *.

"b. It continuously provides twenty-four hour a day nursing service by or under the supervision of registered graduate nurses and is operated continuously with organized facilities for operative surgery; and * * *."

The hospital in which the insured was confined did not have its own facilities for diagnosis and surgery but was affiliated with another hospital for the use of the latter's diagnostic and surgical facilities.

In all three of these cases, it was held that the policy definition did not require that the enumerated facilities be on the premises or within the confines of a building operated by the hospital as an integrated whole. In *Esposito*, it was stated:

"Doubts as to whether the facilities supplied were adequate to meet the policy's defined requirements for a hospital should be resolved by construing the policy liberally in favor of the object to be accomplished, and provisions and conditions therein are to be strictly construed against the insurer. [citations omitted] So construed, the language of the policy defining a hospital supports the finding * * * that the facilities furnished * * * were adequate and sufficient to meet the prescribed policy requirements." 171 So.2d at 179.

We are inclined to agree with the Louisiana court that provisions in a life, health and accident policy should be given a liberal interpretation to the end that equity be done and the underlying beneficent purposes of a contract not be rendered nugatory, or as stated in the *Marr* case:

"Undoubtedly the object to be accomplished by the insertion in the policy of a statement of the facilities to be available was to meet the standard of a hospital which the company determined would guarantee to the policy holders a high standard of care when hospitalized. This was undoubtedly on the theory that the better the care the sooner the patient would be released and thereby minimize the expense to the company. If such be the object to be accomplished, what difference would it make to a recovery whether the named facilities were under one management so long as the care was expertly provided and readily at hand? In so deciding we are not disregarding plain and explicit language, but are holding that a liberal construction of the language of the policies supports the finding of the trial court that the facilities furnished by the hospital in which the insured was confined were in substantial compliance with the definition of a 'hospital' contained in the policy." 254 F.2d at 291.

The hospitals involved in the Texas and South Carolina cases appear not to have had a contractual arrangement for the use of another hospital's facilities and we therefore believe those decisions are not pertinent. The purpose of the policy definition set forth in the defendant's policy was to limit coverage to an institution which is generally accepted as meeting the requirements of a place to care for the sick and infirm. No issue was raised as to the adequacy of the Elks Hospital in this regard, and the record below supports a finding that the facilities furnished were adequate to meet the prescribed policy requirements.

■ We therefore are inclined to follow the reasoning of *McKinney, Esposito,* and *Marr* notwithstanding the fact that the Elks Hospital did not have the enumerated facilities physically located on its premises. We conclude that the trial court properly determined that the Elks Hospital came within the policy definition and that the plaintiff was entitled to recover hospital benefits.

Judgment affirmed.

KRUCKER, J., concurs.

MOLLOY, Judge (specially concurring).

Before the decision of Reserve Life Insurance Company v. Marr, 254 F.2d 289 (9th Cir.1958), cert. denied 358 U.S. 839, 79 S.Ct. 63, 3 L.Ed.2d 74 (1958), this was a reasonably clear insurance policy. Its coverage segregated out of the many "hospitals" in the country those having certain designated facilities and services, most of which the subject hospital does not have. Any rest home can "have" these facilities through a contractual arrangement, but most persons, giving this language its natural meaning, would not conceive that such contracts would determine whether or not a particular institution met the express requirements of this policy.

However, once the Reserve Life Insurance v. Marr decision was rendered, fundamental fairness dictates that this plaintiff should prevail. That decision was rendered upon the very same policy construed here, and as to the very same defendant. Though this policy was issued before that opinion, the policy is for monthly, quarterly, semi-annual or annual terms (the record is unclear which).

In boldface on the front of the policy is this language:

"This policy is renewable at the option of the Company only."

Other verbiage[1] in the policy makes it clear that the company can refuse, without cause, to accept any renewal premium and that such refusal constitutes a termination of the policy.

After the *Marr* decision, it would seem only fair that if Reserve Life did not want to give coverage under this policy for expenses incurred at "hospitals" which "had" the specified facilities through contractual arrangement, it should have issued an endorsement to its policy so stating, or it should have failed to accept the premiums tendered on this policy. Having done neither, it should pay this "hospital" bill.

---

1. Paragraph 4 of "Additional Provisions" reads in part:
"* * * or if any renewal premium be not accepted by the Company, this policy and all benefits hereunder shall terminate without further notice. * *"