FRED M. BURK v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

No. 7021SC15

(Filed 25 February 1970)

1. Insurance § 6— construction of policies

　　Since contracts of insurance are prepared by the insurer, they will be liberally construed in favor of the insured and strictly against the insurer.

2. Insurance § 43.1— major medical policy — "hospital" — institution for treatment of mentally disturbed children

　　Institution, denominated a school, which provided a residential treatment program for mentally and emotionally disturbed children was not

a "hospital" within the terms of a major medical expense insurance policy defining a hospital as an institution for the care and treatment of sick and injured persons "with organized facilities for diagnosis and major surgery, and 24-hour nursing service," where there were no facilities for major surgery available on the premises and there was no affiliation arrangement with any other institution for the furnishing of facilities for major surgery, notwithstanding such facilities were available at two nearby hospitals.

APPEAL by defendant from *Seay, J.,* 26 May 1969 Civil Session of the Superior Court of FORSYTH County.

This is a proceeding to recover, under a major medical expense insurance policy issued to him by defendant, expenses incurred by plaintiff in connection with his daughter's stay at the Devereux Foundation, Victoria, Texas. The matter was heard by Judge Seay without a jury, jury trial having been waived. After hearing the evidence and argument of counsel, the court found facts, made conclusions of law, and entered judgment for plaintiff. Defendant appealed.

*Hudson, Petree, Stockton, Stockton and Robinson by J. Robert Elster and John M. Harrington for plaintiff appellee.*

*Wharton, Ivey and Wharton by Richard L. Wharton for defendant appellant.*

MORRIS, J.

Appellant brings forward seven assignments of error but concedes that they present but one question: Whether the expenses of plaintiff's daughter, Vicki Burk, at the Devereux Foundation were covered by its policy as eligible expenses for medical treatment and hospital charges under its defined coverage.

If plaintiff is entitled to recover, he must bring himself within the coverage for which the policy was issued and for which defendant is obligated to pay.

The portions of the policy pertinent to this appeal are:

"Definitions.

.    .    .

'Hospital' — Wherever used in this Policy 'hospital' means only an institution operated pursuant to law for the care and treatment of sick and injured persons, with organized facilities for diagnosis and major surgery, and 24-hour nursing service. In no event however, shall such term include an institution which

is principally a rest home, nursing home, convalescent home or home for the aged.

Part I.   Major Medical Expense Benefits.

. . .

D.   Eligible Expenses.   'Eligible Expenses' wherever used in this Part I shall include only the following charges with respect to sickness or injury of a Covered Person incurred by or on behalf of such person for medical care and treatment of such person deemed necessary by a licensed physician, but shall in no event include charges in excess of the regular and customary charges for the services, supplies and equipment required for such care and treatment. A charge shall be considered to be incurred on the date of the service, purchase or rental for which the charge is made.

(1)   Hospital Room, Board and Routine Services — Charges by a hospital for room, board and routine services including general nursing care during confinement as a resident inpatient in a hospital due to one sickness or one injury, incurred on or after the 91st day of such confinement.

. . .

E.   Exceptions to Eligible Expenses.   'Eligible Expenses' wherever used in this Part I shall in no event include charges with respect to:

. . .

(7)   Mental illness or functional nervous disorder of any type or cause, but this exception shall not apply to charges incurred during a period of confinement as a resident inpatient in a hospital;".

[1]   Our courts have long subscribed to the principle that, since contracts of insurance coverage are prepared by the insurer, they will be liberally construed in favor of the insured and strictly against the insurer. *White v. Mote*, 270 N.C. 544, 155 S.E. 2d 75 (1967). The general rules of construction are succinctly stated by Justice Lake in *Insurance Co. v. Insurance Co.*, 269 N.C. 341, 152 S.E. 2d 436 (1966):

"It is well settled that, in the construction of a policy of insurance, ambiguous provisions will be given the meaning most favorable to the insured. Exclusions from and exceptions to undertakings by the company are not favored. *Insurance Co. v. Insurance Co.*, 266 N.C. 430, 146 S.E. 2d 410; *Anderson v. Insurance Co.*, 266 N.C. 309, 145 S.E. 2d 845. Nevertheless, it is

the duty of the court to construe an insurance policy as it is written, not to rewrite it and thus make a new contract for the parties. *Hardin v. Insurance Co.*, 261 N.C. 67, 134 S.E. 2d 142; *Richardson v. Insurance Co.*, 254 N.C. 711, 119 S.E. 2d 871; *Pruitt v. Insurance Co.*, 241 N.C. 725, 86 S.E. 2d 401."

[2] The principal question to be determined on this appeal is whether the Devereux Foundation at Victoria, Texas, is a "hospital" within the definition contained in the policy of insurance issued by the defendant to the plaintiff.

The evidence for the plaintiff was, in substance, except where quoted, that Vicki Faith Burk, minor daughter of plaintiff, had been under the care of various psychiatrists since about 1962 when she was 13 years of age. She was under the care of Dr. Alanson Hinman, neurologic pediatric specialist, for about a year, during which time he counseled with her once each week. Dr. Hinman reached the point at which he felt he was not making any headway with Vicki and recommended a psychiatrist. Vicki's parents then placed her in the care of Dr. John M. Pixley, a psychiatrist, who treated her for about two and one-half years. Toward the end of her treatment with Dr. Pixley, Vicki ran away from home for the second time. When she was found, she refused to go home but did agree to see Dr. Pixley who prevailed upon her to enter the minimal care unit of Baptist Hospital. While there, she refused to see her parents and continued to refuse to return home. On the advice of Dr. Pixley and the opinion of Dr. Grant that she should see a child psychiatrist, she was admitted to Duke Hospital where she remained for three weeks under the care of Dr. Jones. The plaintiff's evidence is somewhat contradictory as to whether Dr. Jones recommended Devereux. Mrs. Burk testified that Dr. Jones had told her Duke did not have the facilities for treating a patient of Vicki's sort; that he would recommend some sort of psychiatric institution but had hesitated to because "they are few and far between and very expensive." Mrs. Burk further testified that after that visit she "asked a friend of mine who was friendly with the head of Salem Academy and she told her Devereux and said she knew that Devereux was this type place, for adolescent children, and we contacted Devereux as to the possibility of getting Vicki in. I don't recall that we received any recommendation from him (Dr. Jones) about Devereux. He had heard of Devereux, as I recall, and he felt we were fortunate in being able to get her into it." The Burks called the home office of the Devereux Foundation in Devon, Pennsylvania, and were told they had no room but might have in June. They noticed there was a di-

vision in Victoria, Texas, where they had a friend, who arranged an appointment for them the Tuesday following. The plaintiff testified: "Dr. Jones recommended that Duke didn't have proper facilities for the treatment Vicki needed and he didn't think she could be successfully treated on an outpatient basis. I asked him how then should she be treated and he said there were several places in the country that could give this inpatient treatment but that they were very expensive. We went about finding facilities for Vicki and located the Devereux facilities in Victoria, Texas." Dr. David Jones testified: "I recommended Vicki Burk be treated in a facility of this type. I suggested Devereux. It would have facilities not available at Duke." "I didn't receive any follow-up reports from the Devereux School." Dr. Pixley testified that he had gotten "very complete psychological reports from Devereux Foundation in Vicki's case." He received an initial evaluation of Vicki from W. C. Leiding, Ph. D., Director of Professional Services. The report then was by Dr. Uri Gonik, of the Department of Psychology at the Devereux Foundation, also a Ph. D. and a staff psychologist.

Richard Danko testified that he was Chief Administrator of the Devereux Foundation at Victoria, Texas at the time Vicki was there. The facilities included a gymnasium, swimming pool, tennis courts, football field, track, baseball field, library, stage, theatre, woodshop, automobile maintenance shop, sewing area, recreation area, and all these are important to the therapeutic program. Members of the staff who have been trained in the Devereux approach in a residential treatment program are responsible for carrying out the program. "These persons are not medical doctors." Mr. Danko testified that persons in attendance at the Devereux facility are referred to as "students" because "therapeutically this is important." They employed 25 or 26 teachers trained in special education. "Answering your question how many classrooms we had, if you are speaking of the rooms used for therapy, art therapy, music therapy, I would assume we had approximately 30 areas for programming." The vacation schedule takes place three times during the year: Christmas, Easter and post-camp. The post-camp vacation is the latter part of August, but Christmas and Easter would coincide with the public school vacation. Some of the youngsters do not receive vacations. The fee for the care and treatment of children at Devereux is called a tuition fee. No physician is in residence on the campus with the exception that Dr. Uldahl is in residence three days and three evenings. The physicians providing staff services live in the community and have private practices. Two registered nurses were employed and when they were not there, there were licensed vocational nurses

there. Devereux did not have an X-ray machine, electroencephalograph or electrocardiograph machine, anesthetics and devices for administering them, blood bank, laboratory equipment, operating room, recovery room or electroshock equipment. None of these facilities is available on the premises. They are available in Victoria. There is no common control, purpose, administration, or financing of Citizens Memorial Hospital and Devereux. For the services performed by the hospital, they send bills to Devereux in the ordinary course of business. There is no original contract which governs the services that are to be performed. They bill Devereux on a case-by-case basis. The Citizens Memorial Hospital is a completely separate institution. It is about three and one-half miles from Devereux. The Devereux facility at Victoria has never applied for accreditation with any professional hospital or médical association. It is not listed in any professional index or directory as a private mental hospital. It is listed as a school in the yellow pages of the phone book. It is licensed by Texas as a child-care facility. Devereux does not claim that it is a hospital. It is a residential treatment program for the care of mental health and psychiatric problems. "We don't have need for major surgery at our facility. We do not have any facilities for performing major surgery." Facilities are available to the Devereux Foundation for major surgery or other medical type treatment if needed.

· Dr. George A. Constant testified that he is a physician, a consultant for Devereux, considered himself to be on the staff, and was paid a fee for services as an independent contractor on an individual basis. There are no facilities at Devereux for major surgery. Surgical facilities are available to the patients at Devereux from either of the two hospitals in Victoria, the Citizens Memorial or DeTar. Over objection, Dr. Constant testified "There is an arrangement between them." Citizens Memorial is an institution that is completely separate and apart from the Devereux facility. There is no unity of control, purpose, administration or financing between them, "only just a gentlemen's agreement that we use the Citizens Memorial Hospital as an extension of Devereux for the purpose of taking care of their physical illnesses, you see, and whatever somatic therapies that have to be administered psychiatrically." (Quoted portion subject of motion to strike which was denied.)

Dr. Uri Gonik, Ph. D. in psychology, testified that Vicki Burk was under his care and supervision at Devereux, having been enrolled in early February 1965. Devereux has teachers whose primary function is to get across subject matter but this is not their sole re-

sponsibility, "because they are also trained and guided and are responsible for the monitoring the well-being of the children and reporting back and doing an awful lot of individual inter-personal type of tutorial communications and establishing relationships." When a child comes to Devereux he is not automatically examined by a psychiatrist. Dr. Uldahl, the staff psychiatrist, sees six or seven people a day for the three days she is in residence. Whenever psychiatric consultations are necessary in town, these are arranged for. Surgical facilities are available to the patients, if necessary, at the hospitals in town, either Citizens Memorial or DeTar. There are no facilities at the Devereux facility for performing major surgery. These facilities are available to Devereux. There is no psychiatrist who has operational direction and control of Devereux at Victoria.

Plaintiff's evidence also shows that while at the Devereux facility, Vicki Burk was hospitalized at Citizens Memorial Hospital from 18 December 1965 to 30 December 1965. The attending physician's report was signed by Dr. Constant and the diagnosis was "adolescent adjustment reaction". His bill showed "Consultation, Examination and Admission to Citizens Memorial Hospital 50.00; 12 hosp. days @ $15 per day 180.00", the total bill to "Miss Vicki Burk" being for $230. Plaintiff's exhibits also include a check to Dr. Uri L. Gonik for $225 for Vicki Burk.

We do not discuss defendant's evidence, because it appears to us abundantly clear that defendant's motion at the close of plaintiff's evidence should have been granted. We do not decide whether the charges for which plaintiff seeks to recover are "charges with respect to sickness or injury of a Covered Person incurred by or on behalf of such person for medical care and treatment of such person deemed necessary by a licensed physician . . ." In our view of the matter, the appeal is determined by the answer to the question: "Is Devereux a 'hospital' within the meaning of the policy?" We conclude that the answer is No.

The policy clearly and unambiguously defines "hospital" as *"only* an institution operated pursuant to law for the care and treatment of sick and injured persons, *with organized facilities for* diagnosis and *major surgery,* and 24-hour nursing service." (Emphasis supplied.)

Plaintiff earnestly contends that the evidence is clear that facilities for major surgery were *available* and that that is substantial compliance with the requirement and, therefore, sufficient. He relies on *Travelers Insurance Company v. Esposito,* 171 So. 2d 177 (Fla. Dist. Ct. App. 1965). There the policy defined "hospital" as an in-

stitution which, among other things, "continuously provides Twenty-four hour a day nursing service by or under the supervision of registered graduate nurses and is operated continuously with organized facilities for operative surgery." The institution involved was Devereux Foundation at Victoria, Texas. The appellant contended that Devereux did not qualify because of its very limited medical and diagnostic facilities and because it had no facilities for operative surgery. The Court stated that Dr. Constant's deposition "discloses ample diagnostic and medical facilities, and that there was an affiliation with another hospital for diagnostic and surgical facilities. Such an arrangement with another hospital was sufficient compliance with the requirements to have facilities for diagnosis and operative surgery.", and affirmed the trial court's judgment for plaintiff. The Florida Court cited only one case as authority for its position: *Reserve Life Insurance Company v. Marr,* 254 F. 2d 289 (9th Cir. 1958). There the plaintiff had been confined in the Jane O'Brien Hospital for 14 months. At the time of plaintiff's admission, the institution was licensed by the State of Washington as a "nursing home" to maintain 61 beds and it had a daily average of 50 patients for the year in question. It had a registered nurse on duty at all times, X-ray facilities, and full-time facilities for overnight resident patients, for administering oxygen, and for taking blood samples. The policy defined hospital as "an institution which has a laboratory, X-ray equipment and an operating room where major surgical operations may be performed, and which maintains permanent and full time facilities for the care of over-night resident patients under the supervision of a licensed Doctor of Medicine or Osteopathy and which has a Graduate Registered Nurse always on duty." Jane O'Brien had no operating room but "an arrangement existed whereby the operating room facilities of the Sacred Heart Hospital, one and one-half blocks away, were available if the patient's doctor wished to use them". The Court said the policy contained no requirement that an operating room be on the premises, that the latter portion of the definition was ambiguous in that the supervision phrase could be read to modify either the "facilities" themselves or the "patients" using the facilities. If read the latter way, the Court found sufficient compliance and construed the policy in favor of the insured, finding that the facilities of the institution in which the insured was confined were in "substantial compliance" with the definition of a "hospital" contained in the policy.

Other cases involving a similar question which were decided on the basis of an arrangement with another institution are: *Reserve Life Insurance Co. v. Mattocks,* 6 Ariz. App. 450, 433 P. 2d 303

(1967), where there was a written "Affiliation Agreement" between the Elks Hospital and St. Mary's Hospital "for the purpore of providing to the patients of the Elks Hospital accredited diagnostic, therapeutic, and surgical services". *McKinney v. American Security Life Insurance Company*, 76 So. 2d 630 (La. App. 1954), where the policy required that an institution qualifying as a "hospital" under the policy must have X-ray equipment and where, from the agreed facts, it appeared that X-ray service was available to the institution under contract with another institution. It is interesting to note that the definition of a "hospital" in the policy before the Court in *McKinney* was identical to that in *Reserve Life Insurance Co. v. Marr*, *supra*, decided four years later. No question of ambiguity was raised in *McKinney*.

The evidence before us discloses no affiliation arrangement with any hospital. It is true that all witnesses for plaintiff testified that facilities for major surgery were available at Citizens Memorial Hospital or DeTar Hospital. It is also true that Dr. Constant, over objection, testified that there was "a gentlemen's agreement that we use the Citizens Memorial Hospital as an extension of Devereux for the purpose of taking care of their physical illnesses . . . and whatever somatic therapies that have to be administered psychiatrically." The uncontradicted evidence is that there were no facilities for major surgery available on the premises. Mr. Danko, the administrator, testified that there was no original contract governing the services to be performed by Citizens Memorial, that Devereux was billed on a case-by-case basis, and that for services performed by Citizens Memorial, Devereux was billed in the ordinary course of business. The evidence is clear that the youngsters from Devereux in need of surgery or hospitalization were admitted to Citizens Memorial as any other patient of any practicing physician would be admitted. Plaintiff's daughter was admitted by Dr. Constant who billed plaintiff for the admission and for his daily visits to her at the hospital. The hospital bill for her hospitalization was to "Burk, Vicki; Devereux School, Victoria, Texas". It showed "Fred Berk (sic): Father" and listed Dr. Constant as physician. Even if we conceded that an agreement would bring Devereux within the terms of the policy, which we do not, we find nothing in the evidence showing an arrangement between Devereux and any other institution for the furnishing of facilities for major surgery.

In our view of the matter, availability of such facilities is not sufficient under the terms of the policy. The language used in the policy sued on is simple, cléar, and unambiguous. It is repeated here for emphasis: " 'hospital' means only an institution . . . with or-

ganized facilities for diagnosis and major surgery, . . ." The word "available" nowhere appears.

In *Guardian Life Insurance Co. of America v. Scott*, 405 S.W. 2d 64 (Supreme Court of Texas 1966), the question presented on appeal was whether the Devereux Foundation of Victoria, Texas, was a hospital as that term was defined in a major medical expense policy issued by the insurer to plaintiff. The policy defined a hospital as an institution which, among other requirements, "has facilities . . . including facilities for diagnosis and major surgery." It was undisputed at that trial that Devereux had no facilities for X-ray, laboratory work, or major surgery. Devereux's administrator there stated in his deposition that Devereux had access to the facilities of one or more Victoria hospitals with which the Foundation doctors were associated. The Court stated that the policy was unambiguous and that a policy which provides coverage only if the institution "has" stated facilities does not mean that there is coverage if it "has access" to such facilities in another institution at a different place. Plaintiff argues, however, that the word "with" used in the policy before us is not as strong as the word "has" and suggests that by using the word "with" the defendant has used a " 'slippery' word to mark out and designate those who are insured by the policy" citing *Jamestown Mutual Insurance Co. v. Nationwide Mutual Ins. Co.*, 266 N.C. 430, 146 S.E. 2d 410 (1966), where the Court said: "If, in the application of this principle of construction, the limits of coverage slide across the slippery area and the company falls into a coverage somewhat more extensive than it contemplated, the fault lies in its own selection of the words by which it chose to be bound." We agree with the rule stated but fail to see its application here. Giving the words used their ordinary and accepted meaning, we find no ambiguity nor slippery words or phrases. Indeed, we find that "having" is listed as a synonym for "with". J. I. Rodale, The Synonym Finder (1967).

In *Prudential Insurance Co. of America v. Cline*, 51 Tenn. App. 636, 371 S.W. 2d 158 (1963), the policy defined "hospital" as meaning, among other things, an institution which provides named facilities "under the supervision of a staff of physicians, with twenty-four hour a day nursing service by registered graduate nurses." The institution involved was the Brown Schools, Austin, Texas, a resident treatment center for children with mental or emotional disorders. There the Court said: "The daily visit of a physician, whose office was in Austin, Texas, even when supplemented by frequent visits of other Austin physicians, cannot be considered as constituting, 'staff of physicians'. Neither can the daily presence of one registered

nurse for eight to nine hours at the school, even though she might be subject to being called back at any time during the period of twenty-four hours, constitute the 'twenty-four hour a day nursing service by registered graduate nurses' required by the insurance certificate." Obviously, the lacking facilities were available but the plain, unambiguous terms of the policy did not include the word "available".

A very recent case involving the Devereux Foundation in Devon, Pennsylvania, is *Travelers Insurance Co. v. Page*, 120 Ga. App. 72, 169 S.E. 2d 682 (1969). There one of the requirements in the policy definition of "hospital" was that it be "operated continuously with organized facilities for operative surgery." Although recovery was allowed under a broad interpretation of "operative surgery", the Court refused to accept the argument that "with organized facilities for operative surgery" meant "available" facilities. The Court found no "working arrangement" with another institution from the evidence and said: "The evidence shows conclusively that no 'arrangements' existed and that area hospitals were used only when a private physician would be called in, who was a member of the staff of the nearby hospital, and this physician would get the child admitted for surgery or for the use of other facilities not available at the institution, just as any other member of the public would be admitted."

While we recognize that institutions such as the Devereux Foundation are filling a real need in the treatment of many emotionally and mentally disturbed adolescents and furnishing services not available at most hospitals, and that the necessary expense for treatment for a child at such an institution is frequently rather astronomical; nevertheless, our compassion for the parents cannot override what we think are plain and unambiguous terms of an insurance contract. To construe this policy otherwise would result in creating an ambiguity where none exists. We are not at liberty to rewrite, under the guise of judicial construction, a contract the terms of which are plain and unambiguous. *Anderson v. Insurance Co.*, 266 N.C. 309, 145 S.E. 2d 845 (1966).

For the reasons stated herein, the judgment of the trial court must be

Reversed.

MALLARD, C.J., and VAUGHN, J., concur.