David KRAVITZ

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES.

Civ. A. No. 76–1185.

United States District Court, E. D. Pennsylvania.

May 26, 1978.

Arthur G. Raynes, Philadelphia, Pa., for plaintiff.

Walter R. Milbourne, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Plaintiff seeks summary judgment in this action to recover benefits for confinement of his daughter in a psychiatric institution. Defendant insurer also moves for summary judgment, asserting that confinement in a psychiatric institution is expressly excluded by the terms of the policy in question.

Plaintiff, an employee of the Pennsylvania State University, was insured under the University's group accident and health policy in 1973, when his daughter, Michelle (Shelley) Kravitz, underwent severe psychotic illness, including suicidal tendencies, and required hospitalization and psychiatric treatment. After receiving treatment at the Lancaster Hospital in Lancaster, Pennsylvania, she was referred by her doctor to the Delaware Valley Mental Health Foundation (the Foundation) in Doylestown, Pennsylvania. She was confined there from April 24, 1974, to February 18, 1975, and from June 19, 1975, to November 8, 1975.

The issue before this Court is whether the Foundation is a "hospital" within the terms of the policy then in force, in which case plaintiff would be entitled to benefits for the cost of Shelley's confinement. The applicable policy defines the term "hospital" as follows:

"DEFINITIONS. HOSPITAL. As used in the Group policy the term 'hospital' means only a legally constituted and operated institution having, on the premises, organized facilities (including organized diagnostic and major surgical facilities) for the care and treatment of sick and injured persons by or under the supervision of a staff of legally qualified physicians with a Registered Professional Nurse (R.N.) on duty at all times. In no event, however, will the term 'hospital' include, nor will the term 'covered charges' include any charges incurred in connection with confinement to, any institution or part thereof which is used principally as a rest or nursing facility or a facility for the aged, chronically ill, convalescents, drug addicts, alcoholics, or as a facility providing primarily custodial, educational or rehabilitory care."

Defendant contends that three elements of this definition are not satisfied by the Foundation. It contends that the Foundation does not have an R.N. on duty at all times, does not have organized diagnostic facilities on the premises, and does not have major surgical facilities on the premises. Plaintiff responds that the nursing and diagnostic facilities requirements are met by the Foundation, and that the surgical facilities requirement, admittedly not satisfied, is arbitrary, unreasonable and unconscionable, and in light of public policy should be disregarded, especially since it is being enforced in a discriminatory matter in this instance.

Insurance contracts are contracts of adhesion, where the insurer prepares the policy for the purchaser having no bargaining power. Where a dispute arises, such contracts are construed strictly against the

insurer. *Hionis v. Northern Mutual Insurance Company,* 230 Pa.Super. 563, 327 A.2d 363 (1974). If a defense is based upon an exception or an exclusion in a policy, the defense is an affirmative one and the burden is on the defendant to establish it. *Weissman v. Prashkar,* 405 Pa. 226, 175 A.2d 63 (1961).

Furthermore, an insurance contract will be given a reasonable interpretation in light of the particular subject-matter, situation and contemplation of the parties. *Daburlos v. Commercial Insurance Company of Newark, New Jersey,* 381 F.Supp. 393 (E.D.Pa.1974), *affirmed,* 521 F.2d 18 (3rd Cir. 1975). Pennsylvania courts will rely on public policy in overriding explicit terms in the insurance contract, at least when the contract terms would operate to defeat the reasonable expectations of the insured. *Sands v. Granite Mutual Insurance Co.,* 232 Pa.Super. 70, 331 A.2d 711 (1974).

While it is true that where a doubt exists as to the meaning of the language in an insurance contract such language is construed in favor of the insured, it is also true that where the language of the policy is clear and unambiguous, it cannot be construed to mean other than what it says. Such clear language must be given the plain and ordinary meaning of the terms used. *Turner v. National Life and Accident Insurance Co.,* 372 F.Supp. 1228 (E.D.Pa.1974), *affirmed,* 510 F.2d 971 (3rd Cir. 1975); *Hagarty v. William Akers, Jr., Co.,* 342 Pa. 236, 20 A.2d 317 (1941). A doubt cannot be created for the purpose of resolving it in favor of the insured. *McCowley v. North American Accident Insurance Co.,* 150 Pa.Super. 540, 29 A.2d 215 (1943); *Weiner v. Metropolitan Life Insurance Co.,* 416 F.Supp. 551 (E.D.Pa.1976). Where there is no ambiguity or lack of clarity, the law does not permit looking beyond the language of the contract. *Southeastern Pennsylvania Transp. Auth. v. Transit Casualty Co.,* 412 F.Supp. 839 (E.D. Pa.1976).

In the case at bar, it is clear that the Foundation does not satisfy the requirements of the policy definition of "hospital". Rather than have a registered nurse on duty at all times, the Foundation had a registered nurse on duty on the premises during Shelley's confinement only during one shift, and then on call the remainder of the time, including the time that she was asleep. Furthermore, the nurse was entitled to three days off every two weeks and three weeks' vacation every year. During these periods there was no nurse on duty. (See the deposition of Mrs. Kathleen Carter at pages 12, 13 and 40.) There was no nurse on duty at all during the 3:00 to 11:00 P.M. and 11:00 P.M. to 7:00 A.M. shifts, and the Department of Public Welfare was, therefore, requested to waive the requirement of such nursing service, which the Department in fact did, requiring instead an employee such as a family therapist be designated for each shift to be awake and on the premises at all times. (Carter deposition, pages 39 and 40). Also, when a nurse was vacationing or absent, the doctor who was on call at the time assumed responsibility for answering nursing calls as well. (See the deposition of Dr. Albert Honig at page 23). These arrangements satisfied the Department of Welfare, but clearly are not what the policy anticipates. To have a nurse on duty at all times, it is obviously necessary to hire at least three nurses a day and have one work each shift. The policy obviously contemplates an institution with a full staff. The Foundation is not such an institution. See, in this regard, *Prudential Ins. Co. v. Cline,* 51 Tenn.App. 636, 371 S.W.2d 158 (1963).

The Foundation also lacks the diagnostic and surgical facilities on the premises that the policy calls for in its definition. Plaintiff notes that the Foundation "contains simple laboratory facilities for blood tests, urinalysis, etc., and is equipped to do minor surgery such as cauterizing, suturing, splinting." (Plaintiff's memorandum at page 12). However, the Foundation has a "Memorandum of Understanding" with Doylestown Hospital (the Hospital), which provides that patients at the Foundation

**384**

who need hospitalization are admitted by staff doctors at the Hospital. If a doctor feels that diagnostic testing is required, an appointment is made at the Hospital and the patient goes to the Hospital for the necessary tests. (Carter deposition, p. 34). Clearly, major diagnostic work is not performed on the Foundation premises because, aside from some elementary diagnostic devices, there are no major diagnostic facilities on the Foundation premises. Finally, it is undisputed that the Foundation is lacking in major surgical facilities on premises.

■ Therefore, on the uncontested facts established by the depositions, the Foundation is not a hospital defined by the policy. The issue, then, is whether the policy should be enforced or whether, in the interests of public policy, it should be overridden by the Court.

Plaintiff does not contend that the language is ambiguous, and indeed it is not. The requirements are clearly set forth. Plaintiff instead contends that the requirement is arbitrary and without purpose, except to permit deprivation of coverage. Furthermore, plaintiff contends that the policy is being enforced in an arbitrary manner, contending that defendant has, through its agents, recognized treatment at psychiatric institutions such as the Foundation. To buttress these arguments, plaintiff contends that certain psychological disorders cannot be properly treated in a regular hospital. These disorders, plaintiff contends, are of such an intensely personal nature that the family milieu treatment is necessary in order to assure sensitive, compassionate, personal therapy.

However valid this theory may be, it simply does not address itself to the issues in this case. The issue is not the validity of treatment at the Foundation. The issue is whether the term "hospital" as defined in the policy serves a valid contractual purpose.

We find that it does. The definition, complete with its requirements, defines the perimeters of coverage this policy provides. In so doing, it defines the perimeters of risk

defendant is willing to undertake for a given premium, the amount that had been furnished in this case. There is no indication that defendant would not undertake greater risk, i. e., include within the coverage confinement in institutions such as the Foundation, in return for a higher premium. In fact, defendant asserts, and plaintiff does not dispute, that such coverage is available, and was available at the time of Shelley's disability.

Thus, the definition with which we are concerned is a reasonable contractual provision. There is no merit to the contention that it is inherently arbitrary. Accordingly, numerous courts have upheld denials of coverage where the "hospital" definitions therein contained requirements similar to the definition in the instant case. See *Guardian Life Insurance Company of America v. Scott,* 405 S.W.2d 64 (Tex.Sup. Ct.1966); *Burk v. Prudential Insurance Company of America,* 7 N.C.App. 209, 172 S.E.2d 67 (1970); *Patterson v. Aetna Life Insurance Company,* 248 S.C. 374, 149 S.E.2d 915 (1966).

Plaintiff cites two cases which he claims support his claim that he is entitled to coverage. One is *Meyers v. Aetna Life Insurance Co.,* 39 Dist. & Co.2d 1 (1965), affirmed, 207 Pa.Super. 526, 218 A.2d 851 (1966). However, that case is markedly distinguishable because the policy definition of "hospital" in that policy did not include the requirements of on-premises facilities for diagnosis or surgery and required, not a nurse on duty twenty-four hours a day, but required nursing services twenty-four hours a day. Clearly that policy provided farther-reaching coverage than that with which we are now concerned.

■ Plaintiff also contends that even if diagnostic and surgical facilities requirements are reasonable, they are satisfied by the "Memorandum of Understanding" through which the Foundation had access to the Hospital's facilities. Plaintiff cites *Raynor v. American Heritage Life Ins. Co.,* 123 Ga.App. 247, 180 S.E.2d 248 (1971) for this proposition. That case, however, is dis-

tinct from the instant case. The language in that case defined a hospital as "providing for overnight care of patients * * * with provisions within the hospital for feeding of patients and facilities for both major and minor surgery and for x-ray and laboratory tests." The Court noted that this language could be construed to mean that feeding facilities and surgical and diagnostic facilities had to be within the hospital, but also noted that this provision could be construed to mean only the feeding facilities had to be within the building. Given this ambiguity and interpreting it in favor of the insured, the Court concluded that contractual arrangements with a nearby institution were sufficient to satisfy the requirement of facilities for surgery and diagnosis where such facilities were not indisputably required to be "within the hospital".

The language in the instant case is not ambiguous. The definition in the policy in this case clearly requires "a legally constituted and operated institution having, *on the premises,* organized facilities (including organized diagnostic and major surgical facilities) * * *". This Court is not at liberty to create a doubt for the purpose of resolving it in favor of the insured. Where there is no ambiguity or lack of clarity, we must not look beyond the language in interpreting the contract. See *McCowley v. North American Accident Insurance Co., supra; Weiner v. Metropolitan Life Ins. Co., supra; Southeastern Pennsylvania Transp. Auth. v. Transit Casualty Co., supra.* We find the language of the *Guardian Life* court controlling in this instance: "Terms used in an insurance contract are given their ordinary and generally accepted meaning unless the policy shows the words were meant in a technical or different sense * * *. A policy which provides coverage only if it 'has' stated facilities does not mean there is coverage if it 'has access' to such facilities in another institution at a different place." *Guardian Life Ins. Co. of America v. Scott, supra,* at 65. By the same logic, a policy requiring facilities "on the premises" does not supply coverage if the facilities are available by memorandum, contract or any other legal device, but are located at another institution.

 Finally, plaintiff contends that denial of coverage is being done in a discriminatory manner because defendant's agents have recognized coverage for confinement in psychiatric institutions in similar circumstances. It is true that 40 P.S. § 761 forbids discrimination by an insurer against a given policyholder. However, the statute is designed to give the Pennsylvania Insurance Department statutory authority to police discriminatory practices by insurance companies. It does not, in our opinion, create an implied cause of action in private parties such as the plaintiff. We know of no authority to the contrary and none has been cited. See, *e. g., Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).