44240. TRAVELERS INSURANCE COMPANY v. PAGE.

ARGUED FEBRUARY 3, 1969—DECIDED JUNE 27, 1969—
REHEARING DENIED JULY 15, 1969—

*Greene, Buckley, DeRieux, Moore & Jones, Burt DeRieux, Raymond H. Vizethann, Jr.,* for appellant.

*Nall, Miller, Cadenhead & Dennis, Theodore G. Frankel, Baxter L. Davis,* for appellee.

PANNELL, Judge. 1. The primary question in this case is whether the institution in which plaintiff had his child is a hospital as that term is defined in the policy issued by the defendant. The policy provides for various medical, hospitalization, and surgical benefits. The policy defines the term "hospital" as follows: "The term 'hospital' as used herein means an institution which meets all of the following tests: (a) It is engaged *primarily* in providing medical care and treatment of sick and injured persons on an in-patient basis at the patient's expense and maintains *diagnosic and therapeutic facilities* for *surgical and medical diagnosis and treatment* of such persons by or under the supervision of a staff of duly qualified physicians; (b) It continuously provides twenty-four hour a day nursing service by or under the supervision of registered graduate nurses and is *operated continuously with organized facilities for operative surgery;* and (c) It is not, other than incidentally, a place of rest, a place for the aged, a place for drug addicts, a place for alcoholics or a nursing home." (Emphasis supplied.)

The policy further interprets what is meant by room and board as follows: "Room and board charges wherever reference is made thereto herein shall include all charges for medical care and treatment, *by whatever name such charges are called,* which are made by the hospital at a daily or weekly rate for room and board and other hospital services and supplies, and which are regularly made by the hospital as a condition of occupancy of the class of accommodations occupied." (Emphasis supplied.) In our opinion, the evidence clearly shows, without dispute, that provisions (a) and (c) were complied with and that the provi-

sion for twenty-four hour a day nursing service in paragraph (b) was complied with. The only portion of the definition about which the parties on appeal present any real argument and dispute is whether the evidence demanded a finding either for or against that portion of the definition which requires that the institution be "operated continuously with organized facilities for operative surgery."

Appellee contends that the evidence demands a finding that a working agreement was had with hospitals in the area where the complainant's child resided and was a patient, and that the case is controlled by the following decisions, the first of which involves an identical policy and the same institution but at a location different from that in the present case: Travelers Ins. Co. v. Esposito, 171 S2d 177 (Fla. App.); Reserve Life Ins. Co. v. Marr, 254 F2d 289; Reserve Life Ins. Co. v. Mattocks, 6 Ariz. App. 450 (433 P2d 303); McKinney v. American Security Life Ins. Co., 76 S2d 630 (La. App.). Compare Patterson v. Aetna Life Ins. Co., 248 S. C. 374 (149 SE2d 915) where there were no facilities for surgery and no agreement with a hospital for surgical facilities. See also Guardian Life Ins. Co. of America v. Scott, 405 SW2d 64 (Texas), involving a Devereux Foundation facility and holding that under the policy there involved having facilities at another hospital was not in compliance with the terms of the policy in that case. See also Meyers v. Aetna Life Ins. Co., 207 Pa. Super. 526 (218 A2d 851) involving the Devereux Foundation where the policy did not require surgical facilities. It is our opinion, however, that the evidence demands a finding there was no such special "working agreement" here as was shown to exist in these cases.

The evidence shows conclusively that no "arrangements" existed and that area hospitals were used only when a private physician would be called in, who was a member of the staff of the nearby hospital, and this physician would get the child admitted for surgery or for the use of other facilities not available at the institution, just as any other member of the public would be admitted.

2. We then come to the question of the construction of the term "operative surgery" and whether the Devereux Founda-

tion had such facilities available. The evidence showed there were treatment rooms, examining tables and facilities for very minor surgery. Surgery has been defined in numerous cases as the art or practice of healing by manual operation and as that branch of science which treats by mechanical or operative measures for healing diseases, deformities or injuries. Words and Phrases, Permanent Edition, Vol. 20A, p. 468, et seq. While in our opinion, the use of the word "operative" might carry connotations of cutting rather than mere mechanical manipulation, it can do no more than that as all surgery is in a sense operative surgery. The words "operative surgery" have been defined as to include both major and minor surgery. State v. Thierfelder, 114 Mont. 104, 117 (132 P2d 1035). But the words themselves make *no distinction* between the two, nor do the words categorize major and minor surgery for the purpose of determining the definitions of hospital. We must, therefore, in construing the term most favorably to the insured, construe it to mean that the facilities for any "operative" surgery continuously maintained as provided in the policy is a sufficient compliance therewith. To say that operative surgery means that an institution to be a hospital under the policy must have facilities for both minor and major surgery would be equivalent to saying that it must have facilities for all surgery. The policy does not require this. If the policy had even gone so far as to specify major surgery, we could not require that the hospital have facilities for all major surgery; neither can we require that it have facilities for all types of operative surgery. The policy did not require it and neither can we.

3. We now come to the determination of whether the amount of the judgment was demanded by the evidence. The trial judge apparently based his findings upon two provisions of the policy. Part EDH—Hospital Expense Benefits Section A—For Daily Room and Board Expenses provides that the company "will pay to the employee, subject to the provisions hereinafter contained, an amount equal to the charge made by the hospital to the employee for room and board of such person up to the maximum daily benefit [$30] hereinafter *specified for each day of such confinement for which the hospital charges its daily rate*

*for room and board,* provided that not more than seventy times such maximum daily benefit [$2,100] shall be paid on account of all such charges incurred with respect to any one person as a result of any and all confinements during any one period of disability." (Emphasis supplied.) $2,100 of the judgment awarded appellee was under this provision. Inasmuch as there is no evidence that the hospital had a daily rate for room and board or charged a daily rate for room and board, and even if there were a daily rate for room and board, the amount of such charges is not shown by the evidence, the trial court was unauthorized to render a judgment for $2,100 for room and board under this provision of the policy.

Part EDMX—Major Medical Expense Benefits provides: "If as herein defined . . . and such medical expenses incurred within a period of six consecutive months shall exceed the deductible amount specified below [minimum $100, maximum $300 based on 2 percent of salary of employee], as benefit period shall be established and the company will pay to the employee, subject to the limitations and provisions hereinafter set forth, . . . (ii) 80 per centum of the amount of such excess medical expenses incurred during such benefit period. . ." This part also contained a provision for the payment of certain medical expenses among which were listed: "Hospital Services:—Charges made by a hospital for (1) room and board, . . . (2) necessary medical care and treatment." The maximum payable under this part is $10,000.

The trial judge was authorized to find that appellee had incurred medical expenses in the amount of $16,873.33 to maintain his daughter at the Devereux Foundation from the date of her admission to the date of the filing of the suit, and that of this amount, $2,000 was paid under a federal grant (which made it a basic benefits deductible item under the policy), leaving a balance of $14,837.33. Deducting from this the maximum $300 deductible leaves a balance of $14,573.33. Eighty percent of this is $11,658.66. The maximum amount payable under this provision of the policy, however, is $10,000. The judgment is affirmed with direction that the amount thereof be reduced from $12,100 to $10,000.

■

*Judgment affirmed with direction. Felton, C. J., and Quillian, J., concur.*