**Richard D. HARVEY**

v.

**The TRAVELERS INSURANCE COMPANY.**

**Civ. A. No. 13791.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 10, 1971.

Davis, Mathews & Quigley, Atlanta, Ga., for plaintiff.

Neely, Freeman & Hawkins, Atlanta, Ga., for defendant.

ORDER

ALBERT J. HENDERSON, Jr., District Judge.

The case is before the court on plaintiff's motion for summary judgment. The defendant herein resists said motion claiming that plaintiff is not entitled to a recovery under the terms of the insurance policy stipulated by the parties to be the one covering plaintiff, an em-

ployee of the Coca-Cola Company. For the following reasons, the motion is hereby granted.

The uncontroverted facts indicate that Louise Dudley Harvey, a minor dependent of plaintiff, was admitted into The Devereux Foundation, Devon, Pennsylvania, on October 5, 1965, for the purpose of rehabilitation and treatment of her alleged mental or nervous disorder. From the date of October 5, 1965, until September, 1969, the cost of maintaining Louise Harvey was $600.00 per month; thereafter, said cost was raised to its present rate of $700.00 per month. In view of the fact that the above costs to date exceed the policy limits ($20,-000.00), plaintiff herein seeks to recover merely the insurer's maximum liability under the policy plus the statutory penalty and reasonable attorney's fees pursuant to Ga. Code Ann. § 20–1404 and § 56–1206.

The defendant opposes the motion for summary judgment upon the grounds that (1) Louise Harvey was not and is not suffering from a "mental or nervous disorder" as defined in the policy, (2) the expenses sought to be recovered are not within the "covered medical expenses" as the terms are defined under the policy, and (3) the Devereux Foundation is not a "hospital" as required by the policy. Since the defendant asserts that genuine issues of material facts exist as to these matters, the court hereby elects to discuss same in the sequence stated above.

Initially, it should be noted that some or all of the defendant's contentions involve questions of law for the court and not questions of fact properly considered solely by the jury. Insofar as the questions herein raised by the defendant attempt to disqualify plaintiff from insurance coverage through a definitional dispute, the court may resolve the discrepancy at this time. However, where, after determining the proper interpretation to be given the words of the policy, there persists a factual disagreement as to whether the insured fully qualifies thereunder, then this latter uncertainty

must be resolved by the trier of fact. For the purposes of the present motion for summary judgment, only the defendant's first issue above contains the possibility of a factual dispute.

As to the defendant's first contention, Article I, Section 1 of the policy in question defines "mental or nervous disorder" as follows:

. . . a neurosis, psychoneurosis, psychopathy, psychosis, or mental or emotional disease or disorder of any kind.

While plaintiff concedes that his daughter suffers none of the specifically named afflictions set forth in the definition above, he does contend that her condition fits within the latter catchall phrases of a "mental or emotional disease or disorder of any kind".

Defendant contests Louise Harvey's inclusion under the above definition based on the possibility that Miss Harvey's problem was of *organic* derivation and, therefore, not within the policy coverage. Plaintiff, however, points out that organic dysfunctions are encompassed within the intent of the parties in light of the fact that one or more of the specifically named impairments may be of organic origin. Logically, plaintiff concludes that since the definition envisions organic causes as covered by the policy, the phrase, "mental or emotional disease or disorder of any kind", likewise may be of organic origin.

The court finds merit in this argument and, therefore, concludes that if Louise Harvey is suffering from a disorder irrespective of whether it resulted from organic damage, she is covered by the policy in question. This then raises the only possible issue, factual in nature, properly determined by a trier of fact, *i.e.*, whether Miss Harvey's malady comes within scope of the definition hereinbefore discussed.

Defendant contends that the evidence proffered by plaintiff in this regard is either inadmissible or conflicting. Specifically, defendant objects to several of plaintiff's affidavits as merely testifying to legal conclusions or not within the

first-hand knowledge of the affiant. While, to a certain degree, this is true of the affidavits, the subsequent depositions of Drs. Fitzhugh, Uhler and Duffy amply demonstrate to the court that Louise Harvey has an organic problem with some emotional reaction associated therewith. The basic problem, chronic brain syndrome, as diagnosed and described in the depositions of Dr. Duffy (p. 6) and Dr. Uhler (pp. 10, 12), clearly indicates that Miss Harvey was suffering from a "disorder of any kind" as contemplated by the policy.

■ While defendant avers that the evidence is contradictory, the court is unable to discover the slightest converse evidence offered by defendant justifying a conclusion that Miss Harvey's mental or emotional impairments were of a nature not covered by the policy. In light of the discussion above which concluded that an organically caused mental deficiency was within the policy coverage, defendant's reliance upon the testimony of Dr. Duffy is misplaced. Quoting Dr. Duffy, Miss Harvey's symptoms exhibited, "learning difficulty, showed distractability, short attention span," (Depos. p. 10) and "were symptoms of the underlying organic brain damage and not diagnoses." (Depos. p. 11). Defendant concludes by stating,

It is probably true that these conditions [asphasia, echolalia and perseveration] could result from mental or emotional disorders as well as from organic causes but it is clear that in this case they came from organic damage.

Under either alternative stated by defendant, the court hereby finds the insured within the specified coverage of the policy.

Defendant next contends that the expenses sought to be recovered do not meet the definitional requirements of the policy. The pertinent portions of the policy appear as follows:

Article II, Part EDMX, Section E, P. 5J:

The term 'Covered Medical Expenses' as used in this Part means reasonable charges not hereinafter excepted actually incurred by the Employee on account of himself or his Dependent upon the recommendation and approval of the attending physician for the services and supplies listed below and required in connection with the treatment of the Employee or his dependent for any condition specified in Section A. [accidental bodily injury and sickness].

Hospital Services:—Charges made by a hospital for

(1) Room and Board, as defined herein, . . . and,

(2) Other Hospital Services and Supplies, as defined herein.

Physician's Services:—Charges for the services of a duly qualified physician for

(1) performing a surgical procedure, and

(2) other medical care and treatment, provided, however, that in the case of mental and nervous disorders on account of which the Employee or Dependent, as the case may be, is not confined as a resident in-patient in a hospital, any such charges

(a) in excess of Twenty Dollars ($20.00) per visit, and

(b) for more than Fifty visits per Calendar year, shall not be included.

Inasmuch as the Devereux Foundation provides its patients with total environmental therapy which includes treatment procedures not solely medically oriented, defendant avers that only that portion of the monthly charge directly related to medical expenses is covered by the policy.

This argument, however, ignores the basic purpose underlying Miss Harvey's treatment, and the primary goal of the Foundation, *i.e.,* to develop her ability to actively and productively engage in social intercourse; to treat and attempt to cure her mental and/or emotional deficiencies, and not necessarily to diagnose

and care for her physical illnesses. Placing Miss Harvey in an atmosphere conducive to mental rehabilitation is the objective of the Devereux Foundation since only in this situation can she be accorded the form and manner of therapy she requires.

▬ The court recognizes that many of the services offered the insured are not those normally found in a "general" hospital, but pursuant to the Article I, Section 1, definition for "Other Hospital Services and Supplies" these " . . . services and supplies rendered to the Employee or Dependent, as the case may be, . . . [are covered if] required for treatment of such person, . . ." As such, defendant may not be heard to contest those "reasonable" and "actual" charges incurred by plaintiff herein. In the case of Meyers v. Aetna Life Ins. Co., 207 Pa.Super. 526, 218 A.2d 851 (1966), the court in discussing the Victoria, Texas branch of the Devereux Foundation stated:

> The suggestion that the Victoria Unit is simply a boarding school or educational institution cannot be accepted. The educational program at Victoria was a part of the total environmental therapy program; it was not the purpose of the program to educate, it was the purpose to cure its patients. . . .

*Id.,* at 531, 218 A.2d at 855. Similarly, the patient here entered the Devon, Pennsylvania branch of the Foundation for the treatment of her mental, not her physical, well-being. Accordingly, the court hereby concludes that the expenses herein claimed are of the type contemplated by the parties when it was determined that mental or nervous disorders would be covered by the policy.

Defendant's third and final challenge to the granting of plaintiff's motion is the most basic and easily determined issue of all. In short, defendant contends that the Devereux Foundation is not a "hospital" as defined by the policy, and that, as a consequence thereof, plaintiff's expenses are not therein covered.

Once again, a complete discussion of this point must begin with the policy definition found in Article I, Section 1:

> The term "hospital" as used herein means an institution which meets all of the following tests:
>
> (a) It is engaged primarily in providing medical care and treatment of sick and injured persons on an in-patient basis at the patient's expense and maintains diagnostic and therapeutic facilities for surgical medical diagnosis and treatment of such persons by or under the supervision of a staff of duly qualified physicians;
>
> (b) It continuously provides Twenty-four hour a day nursing service by or under the supervision of registered graduate nurses and is operated continuously with organized facilities for operative surgery; and
>
> (c) It is not, other than incidentally, a place of rest, a place for the aged, a place for drug addicts, a place for alcoholics or a nursing home.

Defendant concedes, as he must, that subsections (b) and (c) serve as no obstacle to the Foundation qualifying as a "hospital" under the above definition. Further, defendant does or should recognize that the case of Travelers Ins. Co. v. Page, 120 Ga.App. 72, 169 S.E.2d 682 (1969), is dispositive of the issue of whether the "operative surgery" requirement of subsection (a) is met. However, defendant does suggest that the Foundation fails to meet the very first requirement insofar as it is not "engaged primarily in providing medical care and treatment of sick and injured persons on an in-patient basis."

More specifically, defendant avers that while the Foundation may accord such medical treatment to other children having residence therein, Louise Harvey's condition does not warrant the "medical care and treatment" otherwise available. In other words, defendant believes that since Miss Harvey does not receive constant psychiatric or other medical examinations, the Devereux

Foundation thereby fails to meet the specifications necessary for a "hospital".

 The court finds this argument to be without merit in light of the numerous cases that have considered the question of whether the Devereux Foundation is a "hospital" under the above definition, and the unjustified inference that since Miss Harvey does not receive medical care, the entire Foundation fails to qualify.

The cases of Travelers Ins. Co. v. Page, *supra*; Travelers Ins. Co. v. Esposito, 171 So.2d 177 (Dist.Ct.App., Fla., 1965); and Meyers v. Aetna Life Ins. Co., *supra*, fully considered the question of whether the Devereux Foundation, as an environmental therapy center, satisfies the policy definition of a "hospital." Further, the court in Wilkie v. Union Trust Life Ins. Co., decided by the Circuit Court of Dane County, Wisconsin on August 22, 1962 (as completely set out in the *Meyers* case, *supra*) in discussing the Devon, Pennsylvania branch stated:

> A review of the record convinces me beyond peradventure that Devereux Foundation is a "hospital" and not a "school" except that as a part of the therapy for mentally ill children, certain teaching is done to facilitate the main chance of improving the child.

The court can find no substantiation for the argument that since the facility offers full attention to its mental patients, its services outside those supplied by "general" hospitals thereby bars the Foundation's qualification under the present policy. If the coverage herein tendered by defendant to the employees of Coca-Cola is to have any value for those suffering from a "mental or nervous disorder", then the services usually provided by mental institutions must necessarily be deemed as within the contemplation of the parties. Although the court finds no ambiguity in the definitions herein involved, to the extent that such terms are capable of two diverse interpretations, general insurance law principles require the court to adopt the construction most favorable to the insured. See, *e.g.*, Ketona Chemical Corp. v. Globe Indemn. Co., 404 F.2d 181 (5th Cir. 1968); Saint Paul-Mercury Indem. Co. v. Rutland, 225 F.2d 689 (5th Cir. 1955).

In summary, the court finds no issue to exist as to any material fact, and, therefore, grants plaintiff's motion for summary judgment. Judgment shall be entered on the issue of liability under the policy. Proof of the actual and reasonable expenses incurred, bad faith pursuant to Ga.Code Ann. § 56–1206, and reasonable attorney's fees under Ga.Code Ann. § 20–1404, must await a determination by the jury at the time of trial.