Rebecca **TURNER**

v.

The **NATIONAL LIFE AND ACCIDENT INSURANCE CO.**

Civ. A. No. 73-303.

United States District Court,
E. D. Pennsylvania.

April 1, 1974.

David C. Harrison, Philadelphia, Pa., for plaintiff.

Murray I. Blackman, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

This is a suit on a life insurance policy. Before us are cross motions for judgment on the pleadings. Because the facts are indeed not in dispute and are contained entirely within the pleadings, this manner of disposition of the case is appropriate. For the reasons stated below, we will grant judgment for the defendant insurance company.

### I. The Facts

The plaintiff, Rebecca Turner, is the widow of Billy J. Turner and the beneficiary of an endowment life insurance policy issued to him by the defendant on December 14, 1967. The policy lapsed on April 15, 1972, as the result of nonpayment of premiums. The insured died in a swimming pool accident on July 23, 1972. About two months later, pursuant

to a nonforfeiture feature providing for extended insurance in the event of a policy lapse, the defendant paid the plaintiff the sum of $6,000, the amount of the basic death benefit under the policy. The subject of the present suit is the $6,000 double indemnity benefit of the policy and the $4,040 mortgage insurance benefit under the policy.[1] The plaintiff contends, and the defendant denies, that the extended insurance provision covers the double indemnity benefit and the mortgage insurance as well as the basic death benefit. Both parties have thus asked us to render a ruling based upon our interpretation of the contract.

## II. *The Contract of Insurance*

The insurance contract is 26 pages long. The relevant provisions are found on the ninth, fourteenth, and nineteenth pages. The ninth page of the policy bears the heading, in large letters, NONFORFEITURE PROVISIONS. The pertinent portions are:

[1][2] EXTENDED INSURANCE. If extended insurance periods are shown in the Table of Cash, Loan and Nonforfeiture Values and if this policy lapses, insurance shall be continued automatically in force as term insurance for a level amount equal to the amount of insurance in effect under this policy on the date of premium default, less any indebtedness. . . .

[2] BASIS OF COMPUTATION . . .
. . .
. . . Any insurance continued under these nonforfeiture provisions shall not include disability benefits, additional benefits for death by accidental means or other supplementary benefits provided by rider or otherwise. . . .

The double indemnity provisions of the policy are on page fourteen, which is headed in large letters ADDITIONAL INDEMNITY AGREEMENT. The pertinent portions of that agreement are:

[3] BENEFIT. Upon receipt at the Home Office of the Company of due proof that the death of the Insured resulted from bodily injuries as defined and limited below, the Company, subject to the terms and conditions of this agreement and the policy, agrees to pay to the Beneficiary, in addition to any amount otherwise payable, the Additional Indemnity amount shown in the Benefit and Premium Schedule on Page 3. This agreement covers only such death which occurs (a) on or after the Insured's first birthday and before the policy anniversary on which the attained age of the Insured is seventy years, and (b) while this policy and this agreement are in force with no premium in default beyond the grace period.

[4] TERMINATION. This agreement shall terminate (a) on the policy anniversary on which the attained age of the Insured is seventy years; (b) upon termination of the grace period if any premium for this policy or this agreement is then in default, whether or not a nonforfeiture provision of the policy becomes operative; (c) . . .

The mortgage insurance agreement is page 19 of the policy and is headed in large type: MORTGAGE TERM INSURANCE AGREEMENT. The pertinent passages are:

[5] ADDITIONAL INSURANCE. Upon receipt at the Home Office of the Company of due proof

---

1. Jurisdiction is founded upon diversity of citizenship.

2. These provisions are numbered in this Opinion to facilitate reference to them in our discussion *infra*.

that the death of the Insured occurred prior to the Termination Date of this agreement shown in the Benefit and Premium Schedule on Page 3 and while the policy and this agreement were in full force with no premium in default beyond the grace period, the Company, in addition to any other benefits provided by the policy, agrees to pay to the Beneficiary an additional amount determined from the table for this agreement set forth on Page 3A.

[6] TERMINATION. This agreement shall terminate (a) upon expiration of the grace period if any premium for the policy or this agreement is then in default, whether or not a nonforfeiture provision of the policy becomes operative; (b) . . .

### III. *Discussion*

■ If doubt exists as to the meaning of the language used in an insurance policy, that language is to be interpreted favorably to the insured. Nevertheless, where the language of the policy is clear and unambiguous, it cannot be construed to mean otherwise than what it says. It must be given the plain and ordinary meaning of the terms used. Brunner v. McCullough, 216 F.Supp. 496 (E.D.Pa. 1963); Hagarty v. William Akers, Jr., Co., 342 Pa. 236, 20 A.2d 317 (1941).

There is no ambiguity in provisions 2, 3, 4, 5, and 6 quoted above. They specifically and clearly provide that the double indemnity benefit (3 and 4) and the mortgage insurance (5 and 6) are not payable when the policy is in lapse. Plaintiff does not strenuously contend to the contrary, but rather focuses her argument on the alleged ambiguity of provision 1. Indeed nothing in provision 1 indicates that a lapse results in termination of the double indemnity and mortgage insurance benefits. Plaintiff argues that the policy's failure to make

this termination plain in the same paragraph which defines extended insurance is an ambiguity not overcome by the appearance of the other quoted clauses placed elsewhere in the policy. She further argues that despite the fact that clause 2 appears on the same page as clause 1, the admonitory effect of clause 2 is muted by its placement under a subheading "Basis of Computation," which begins with a technical discussion of certain actuarial details, thus leading the reader to believe that it contains no important statements of the scope of extended insurance coverage.

■■ We cannot gainsay that contracts of insurance are to be construed strictly against the insurer. To find an ambiguity in this contract, however, we would have to stop reading after clause 1, for once we continue on to the other clauses the limitation on the extended insurance becomes clear. Plaintiff urges that it would have been easy for the insurance company to include the limitation in the same paragraph as clause 1. This is no doubt true. Had this Court the power of the Insurance Commissioner, we might well require it to do so, and, in any event, perhaps the experience of the expense and uncertainty suffered by the company by virtue of this lawsuit will persuade it to do so. But the entire contract is very long, and obviously its important provisions cannot all be put in one paragraph or even one page. Furthermore, the fact that the contract is printed in small type cannot aid the plaintiff in this case because there is nothing in large type tending to mislead one about the scope of the non-forfeiture provisions. Thus this case is not like Mohan v. Union Fidelity Life Ins. Co., 207 Pa.Super. 205, 216 A.2d 342 (1966), relied upon by the plaintiff, where a sickness and accident policy was headlined "PAYCHECK-PLUS" but the small print provided for a schedule of benefits which were less than the claimant's paycheck.

Plaintiff relies principally on two cases which ordered payment of double indemnity benefits despite the presence in

the policy of extended insurance provisions excluding double indemnity benefits. In Salamone v. Prudential Ins. Co., 103 S.W.2d 506 (Mo.App.1937), the extended insurance provision read, "the amount of insurance payable if death occur within said term [the duration of extended insurance after the policy lapses] shall be the same amount as that which would have been payable if this policy had been continued in force except as to dividend additions subsequent to the date of lapse." This provision unambiguously supported the plaintiff's position in that case, not only because the main clause provided for full benefits, but also because the specific mention of the exception for dividend additions implied that there were no other exceptions. Consequently, even though the double indemnity provision on the reverse side of the policy was by its own terms inapplicable when premiums were in default, the court resolved the inconsistency between the two provisions in favor of the insured. *Salamone* is distinguishable from the case *sub judice* because the Turner policy said only "the amount of insurance in effect under this policy"; the *Salamone* policy contained the stronger language "the same amount as that which would have been payable if this policy had been continued in force." In addition, as seen earlier, the "Nonforfeiture Provisions" page of the Turner policy also included, in another paragraph, the specific and clear exclusion of the additional benefits from the extended insurance coverage.

■ The second case is Hay v. Connecticut Mutual Life Ins. Co., 176 Tenn. 48, 138 S.W.2d 413 (1940). The policy in that case provided for "Participating Extended Insurance, payable as herein provided, for the face amount of this Policy . . . ." The double indemnity provision promised double indemnity payment upon due proof "that the death of the insured occurred while said policy was in full force." Later in the double indemnity provision appeared the language "Failure to pay any premium or instalment thereof when due as herein

provided or within thirty-one days thereafter . . . prior to the receipt of proof of accidental death as aforesaid, will forthwith terminate this Agreement and all liability of the Company hereunder." The court contrasted several other cases denying recovery where the policies expressly excluded accidental benefits from the operation of the extension clause either in the extension clause itself or in the double indemnity agreement. Recovery was granted in *Hay* because (1) the extension clause did not exclude the double indemnity benefit and (2) the double indemnity provisions did not make specifically clear that the double benefit was void while the policy was running under extended insurance. The Turner policy is much clearer. With respect to the first point above, the page containing the nonforfeiture provisions includes a specific warning that "Any insurance continued under these nonforfeiture provisions shall not include disability benefits, additional benefits for death by accidental means or other supplementary benefits provided by rider or otherwise. . . ." And with respect to the second point, both the double indemnity and the mortgage insurance agreements provide in two places that they are not in force while a premium is in default beyond the grace period; and the second of these two warnings in each supplemental agreement adds "whether or not a nonforfeiture provision of the policy becomes operative." The reasons given by the *Hay* court for its decision thus make it plain that the Turner policy would have called for the opposite result.

We note that the Pennsylvania legislature, in the Standard Nonforfeiture Law, 40 Pa.Stat.Ann. § 510.1(e)(i, iv), has expressly declined to prohibit the exclusion of accidental death benefits and term insurance supplements from the scope of nonforfeiture benefits (although the Standard Nonforfeiture Law does not apply to pure endowment policies such as the Turner policy). Conceivably, the Pennsylvania Insurance Department, in light of the amount of re-

ported litigation over double indemnity coverage under extended insurance, may wish to consider requiring a standard form of language for extended insurance which excludes double indemnity and other supplemental benefits. Until such time as the Department sees fit to do so, however, we must construe the insurance contract as fairly as possible, giving the insured the benefit of any doubt; but as seen from the foregoing discussion, the policy in this case is neither ambiguous, self-contradictory, nor misleading. Accordingly, we will deny the plaintiff's motion for judgment on the pleadings and grant the defendant's motion for judgment on the pleadings.