**COMPAGNIE DES BAUXITES DE GUINEE, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

Civ. A. No. 75–1568.

United States District Court,
W.D. Pennsylvania,
Civil Division.

Nov. 10, 1982.

Cloyd Mellott, Robert Doty, Andrew Roman, Eckert, Seamans, Cherin and Mellott, Pittsburgh, Pa., for plaintiff CBG.

Randall J. McConnell, Jr., Steve Mlinac, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendant INA.

SIMMONS, District Judge.

This action involving Plaintiff CBG's claim under a contract of insurance for a business interruption loss sustained and caused by a train collision in Guinea, West Africa, was tried before a jury. After the Court's charge, special interrogatories were submitted to the jury, and the jury's answers to said interrogatories are attached hereto as Exhibit "A". The Court directed a verdict in the amount of $72,273, as to one aspect of Plaintiff's damage claim, and the jury, after lengthy deliberations, found in favor of Plaintiff as to interrogatories one and two and in favor of Defendant INA as to interrogatory three which included other elements of Plaintiff's damage claim. (See Exhibit "A" attached hereto). During the course of the trial, this Court made several rulings on the record concerning points of law, and in order to set forth and explain the reasons underlying these rulings, the Court now issues this supplemental opinion.

I.

[1] Plaintiff CBG requested that this Court charge the jury that the Plaintiff was entitled to recover all of its business interruption losses *proximately* resulting from the train collision.

Specifically, Plaintiff CBG proposed the following jury instruction:

Losses in such a case are proximately caused by an event covered by the policy

whenever it appears, first, that the covered event was a substantial factor in either bringing about or actually causing these losses and, second, that the losses are either a direct result or a reasonably probable consequence of the event in question.

This does not mean that the law recognizes only one proximate cause of an item of loss. On the contrary, many factors or things may operate at the same time, either independently or together, to cause an item of loss and in such a case, each would be a proximate cause.

The law provides for the situation when concurring or multiple causes of a loss appear, some of which may be covered by an insurance policy and others of which may not be. In such a situation, the insurance company will be responsible for the total amount of the loss if an insured cause is a "proximate" cause of the loss. Accordingly, if you find that the plaintiff suffered an interruption of business caused by damage to or destruction of real or personal property, then the plaintiff is entitled to recover its total loss which was a proximate result of the interruption of business caused by the damage to or destruction of the real or personal property, regardless of the possibility that other causes may have contributed to the total loss.

The Court rejected Plaintiff's theory of causation and instructed the jury that any interruption of business at any relevant time which occurred as the result of anything other than the damage to or destruction of real or personal property caused by the train collision was not a recoverable loss under the contract and should not be considered in computing the actual loss sustained, if any, as a result of the July 17, 1974 train collision. The Court reiterated to the jury that the interruption of business must result *directly* from the damage to or destruction of the locomotives and ore cars involved in the train collision. The Court further instructed the jury that no damages could be recovered for an interruption of business caused by the lack of trained and qualified locomotive operators. These in-

structions were in total accord with the language of the contract of insurance which explicitly states that the loss must result directly from the necessary interruption of business caused by damage to or destruction of real or personal property. It is also clear that the destruction of human life is certainly not a "destruction of real or personal property". Since the words "directly resulting from" are the plain and unambiguous expression of the agreement of the parties to the contract of insurance, it is not proper for this Court to construe the language "directly resulting from" to be other than what it says. *See, e.g., Turner v. National Life and Accident Insurance Co.,* 372 F.Supp. 1228 (E.D.Pa.1974), *aff'd* 510 F.2d 971 (3d Cir.1975).

Plaintiff CBG previously argued that this Court should instruct the jury on proximate causation in accordance with the language utilized by Judge Knox in *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co.,* 475 F.Supp. 586 (W.D.Pa.1979), *aff'd in part and rev'd in part,* 632 F.2d 1068 (3d Cir.1980). However, on appeal, the United States Court of Appeals for the Third Circuit did not address that portion of Judge Knox's charge pertaining to causation, hence we are not bound by that particular language.

Special interrogatory 2 (See Exhibit "A" attached), to the jury read: "Did CBG experience a loss in production sometime during the period between July 17, 1974 and November 17, 1974, which was *directly* caused by the July 17, 1974 train collision?" The jury answered this question in the affirmative, thus finding in favor of the Plaintiff CBG as to the issue of causation. Under these circumstances, Plaintiff certainly cannot rationally claim reversible error as to this portion of the Court's charge since the jury found completely in Plaintiff's favor as to the question of causation, because Plaintiff proved to the satisfaction of the jury (See answer to interrogatory 2 on Exhibit "A") that Plaintiff's damages (as computed on Plaintiff's Exhibit 102 and which was admitted in evidence) flowed *directly* from one and only one cause, name-

ly, the loss of use of certain ore railroad cars that were destroyed and/or damaged in the aforementioned train collision. The Plaintiff's proof submitted in this subject case supported one and only one theory of loss.

At trial, Plaintiff's computation of loss was based solely on the lost capacity of the ore cars. See Plaintiff's Exhibit 102, "Computation of Loss", which set out in complete detail the Plaintiff's theory and computation of its claimed loss. This was the only theory of recovery advanced by Plaintiff CBG throughout trial which was supported by competent evidence, and as we have previously pointed out, the jury found in Plaintiff's favor as to their only theory of lost production. Plaintiff's calculation of damage was based on the amount of tonnage that could not be trammed as a result of the decreased number of ore cars available after the train collision, and, there was simply no evidence in the record which would have supported Plaintiff's requested charge on concurring causation. The charge of this Court adequately covered the one and only theory of relief presented to the jury by the Plaintiff, and the jury found in the Plaintiff's favor on the issue of causation. Under these circumstances, the plaintiff certainly has no cause to complain.

■ Moreover, since insurance is a matter of contract, the parties to a policy of insurance are free to agree to any conditions which are reasonable as long as they are not contrary to public policy. Thus the parties may by agreement contract as to choice of law provision, statutes of limitation which are less than those granted by substantive law, and the quantum of proof necessary for recovery under the terms and conditions of the policy of insurance. See, e.g., 13 Pa.C.S.A. § 1105(a) (Under UCC parties may agree as to the applicable law); Marshall v. Aetna Casualty and Surety Co., 643 F.2d 151 (3d Cir.1981) (Contractual provision limiting time for suit on insurance contract is valid even if shorter than time provided by otherwise applicable statute of limitations); Fratto v. New Amsterdam Casualty Co., 252 A.2d 606, 434 Pa. 136

(1969) (Insurer may properly include in contract of insurance provisions setting time limits on commencement of suits). See also 19 P.L.E. Insurance § 418.

■ In this case, the parties unambiguously stated that the loss must result directly from the necessary interruption of business caused by damage to or destruction of real or personal property, and the Court instructed the jury in accordance with the expressed intent of the parties. It is well established that the language of an unambiguous policy of insurance cannot be construed to mean other than what it says. St. Paul Fire & Marine Insurance Co. v. U.S. Fire Insurance Co., 655 F.2d 521 (3d Cir. 1981); Daburlos v. Commercial Insurance Co., 521 F.2d 18 (3d Cir.1975); Brezan v. Prudential Insurance Co. of America, 507 F.Supp. 962 (E.D.Pa.1981); Turner v. National Life & Accident Insurance Co., 372 F.Supp. 1228 (E.D.Pa.1974), aff'd 510 F.2d 971 (3d Cir.1975). It is not for this Court to give the contract of insurance a construction in conflict with the plain meaning of the unequivocal language contained therein. See 18 P.L.E. Insurance § 91 and cases cited therein. See also Steuart v. McChesney, 444 A.2d 659 (Pa.1982) (wherein the Supreme Court of Pennsylvania has recently reiterated its support of the "plain meaning doctrine" in the interpretation of contracts).

## II.

At trial, Plaintiff CBG made several contentions concerning the burden of proof, contending that it was the burden of the Defendant INA to prove that CBG's production losses were caused by problems other than the railroad collision, and additionally contending that Defendant INA had the burden of proving that CBG did not use available inventory to reduce the loss resulting from the railroad collision. However, this Court properly instructed the jury relative to the burden of proof.

■ In a civil case it is the Plaintiff who bears the burden of proving its claim by a preponderance of the evidence, and it

is the Plaintiff who bears the burden of providing evidence from which its claim can be established. *Eastern Associated Coal v. Aetna Casualty & Surety Co.,* 632 F.2d 1068 (3d Cir.1980). If an insurer bases a defense on an exception or exclusion to the policy of insurance, then the defense is an affirmative defense and the burden is on the insurer to establish it. *Great American Insurance Co. v. Raque,* 448 F.Supp. 1355 (E.D. Pa.1978), *aff'd* 591 F.2d 1335 (3d Cir.1979). It is only when an insurer seeks to disclaim coverage by invoking an exclusionary provision of the contract of insurance that the Defendant bears the burden of proving that the exclusion is applicable. *Daburlos v. Commercial Insurance Co.,* 521 F.2d 18, 24 (3d Cir.1975); *Myrtil v. Hartford Fire Insurance Co.,* 510 F.Supp. 1198 (E.D.Pa.1981). *See also Weiss v. CNA,* 468 F.Supp. 1291 (W.D.Pa.1979); *Kravitz v. Equitable Life Assurance Society of United States,* 453 F.Supp. 381 (E.D.Pa.1978); *Taylor v. Phoenix Mutual Life Insurance Co.,* 453 F.Supp. 372 (E.D.Pa.1978).

■ Defendant INA, even prior to trial, conceded that the train collision was a peril insured against under the terms and conditions of the policy of insurance. It was Defendant INA's position, however, that there was no actual loss sustained by CBG as defined by the policy of insurance. At no time did Defendant INA ever contend that the train collision was not a peril insured against; accordingly, there was no affirmative defense asserted which would place the burden of proof on Defendant INA with respect to a policy exclusion. It therefore remained Plaintiff CBG's burden throughout the trial to present evidence in support of its claim that it sustained an actual loss as a direct result of the railroad collision, and the Court correctly instructed the jury relative to Plaintiff CBG's burden of proof.

In arriving at the amount of actual loss sustained, the policy of insurance requires that if the Insured could reduce the loss by making use of "stock", that is, inventory, then the reduction in loss as a result of utilizing inventory shall be taken into account in the computation of loss. Plaintiff had the burden of proving its claim for damages in accordance with the requirements of the policy of insurance, and no evidence was presented at trial which would shift the burden of proof to Defendant INA. In light of the evidence presented at trial, it would have been reversible error for this Court to have instructed the jury that Defendant INA had a burden of proof in this case.

### III.

■ Plaintiff CBG also took issue with the Court's instructions to the jury concerning the use of inventory. The Court instructed the jury that in determining whether there was a loss in shipments for the relevant period of time, they must first determine whether there was sufficient available inventory on hand which CBG could have used to meet planned shipments. However, the Court emphasized to the jury that the use of any available inventory was to be considered in a commercially reasonable manner, so as to reduce the loss and in such a manner as to enable the resumption of operations with the same quality of service which existed immediately prior to the train collision. This instruction was in accord with Plaintiff's proposed Jury Instructions, and in accord with the theory Plaintiff presented at trial, namely, that although some inventory was available, the cost of making that inventory available for shipment was so prohibitive that it would have been unreasonable to do so. The jury was properly instructed as to this disputed issue of fact, and in instructing the jury this Court used Plaintiff's very own language pertaining to the use of inventory in a commercially reasonable manner. See Exhibit "B" attached hereto, i.e., Plaintiff's Suggested Point for Charge No. 28.

### IV.

This Court has carefully reviewed the rulings made at trial and the charge to the jury with respect to causation, burden of proof and use of inventory and is convinced that these rulings and the charge of the

Court were properly made. This Court charged the jury in complete accordance with the language of the contract of insurance and in accordance with the settled principles of law pertaining to the burden of proof.

## EXHIBIT A

### SPECIAL INTERROGATORIES

1. Did Plaintiff CBG incur expenses for the purpose of reducing loss resulting directly from the July 17, 1974 train collision?

YES  _✓_  NO  ___

AMOUNT  72,273

YOU ARE DIRECTED TO ANSWER QUESTION 1 AS YES AND IN THE AMOUNT OF $72,273.

ANSWER QUESTION 2.

2. Did CBG experience a loss in production sometime during the period between July 24, 1974 and November 17, 1974, which was directly caused by the July 17, 1974 train collision?

YES  _✓_  NO  ___

ANSWER QUESTION 3 ONLY IF YOUR ANSWER TO QUESTION 2 WAS YES. IF YOUR ANSWER TO QUESTION 2 IS NO, PROCEED TO QUESTION 5, ENTER "NONE" ON LINE 5A, AND ENTER THE AMOUNT OF $72,273 ON LINE 5B.

3. Did CBG experience a loss in shipments as a direct result of the lost production due to the July 17, 1974 train collision, after taking into account CBG's inventory available for shipment?

YES  ___  NO  _✓_

ANSWER QUESTION 4 ONLY IF YOUR ANSWER TO QUESTION 3 WAS YES. IF YOUR ANSWER TO QUESTION 3 IS NO, PROCEED TO QUESTION 5, ENTER "NONE" ON LINE 5A, AND ENTER THE AMOUNT OF $72,273 ON LINE 5B.

4. If CBG experienced a shipping loss of dried bauxite ore which was the result of the July 17, 1974 train collision, calculate the net sales value of the lost shipments (Tons multiplied by contract price) in accordance with Appendix 1, attached, and reduce it by the cost of raw stock and normal charges and expenses.

| | | |
|---|---|---|
| 4A. | Sales Value of Lost Shipments (Tons times Contract Price; see Appendix 1, attached). | $_____ |
| 4B. | Cost of Raw Stock ea. $0.2304 per ton | $_____ |
| 4C. | Normal Charges and Expenses (see Appendix 2, attached). | $_____   $_____<br>total of 4B + 4C |

Fill in Line 4A. Add lines 4B and 4C. Subtract total of Line 4B and 4C from Line 4A, and enter this amount on Line 4D.

| | | |
|---|---|---|
| 4D. | Actual Loss Sustained | $_____ |

ANSWER QUESTION 5.

5. Enter the actual loss sustained, which is Line 4D, above. Enter the amount set forth in the answer to Interrogatory 1. Add these amounts and enter the total on Line C.

(A) Line 4D, above     $ None
(B) Interrogatory #1     $ 72,273
(C) TOTAL     $ 72,273

DATE: _September 1, 1982_  SIGNED: 1. _Gerald B. McNulty_
(Foreperson)
2. _Cathy L. Lewandowski_
3. _Marie Fish_
4. _Carol Morrison_
5. _Geraldine Wolfe_
6. _Patricia Taylor_
7. _Richard L. Capozzi_
8. _Denise L. Chelton_

## APPENDIX 1

The information contained in Appendix 1 will assist you in answering Special Interrogatory 4A.

There are two time periods involved in determining the price of bauxite ore under the contracts of sale involved in this case.

Period 1 is the period July 24, 1974, to and including September 30, 1974.

Period 2 is the period October 1, 1974, to and including November 17, 1974.

As to the first period (July 24, 1974, to and including September 30, 1974), and the second period (October 1, 1974, to and including November 17, 1974), you must determine certain facts which are in issue in order to calculate the value of any lost tonnage that occurred during these periods of time.

You will recall that the Plaintiff contended that it suffered losses during both periods of time, that is, the period of time included in Period 1, and the period of time that is included in Period 2. The Defendant, on the other hand, contended that there were production losses occurring during part of the first period only, that is, July 24, 1974, to and including September 30, 1974, and in fact contended that all losses had ceased as of August 31, 1974. The Defendant further contended that these production losses in the first period (July 24, 1974 to and including September 30, 1974), were offset by the use of available inventory.

If you find that Plaintiff suffered production losses only in Period 1, you will not be concerned with the Period 2 instructions which will be detailed hereafter, and you must then proceed to determine whether the Defendant's contention that the use of inventory offset the Plaintiff's production loss is correct.

## PERIOD ONE INSTRUCTIONS

If you find that the Plaintiff's use of available inventory did not offset the production losses sustained by Plaintiff in Period One (July 24, 1974 to and including September 30, 1974), you must determine what said shipping losses in fact are, in terms of tonnage.

Calculate the value of the shipping losses in Period One (July 24, 1974 to and including September 30, 1974), by multiplying the number of tons of lost shipment by $9.57 per Ton.

Enter this amount on Line A of this Appendix. (Page 3) [see page 1244]

If you find that Plaintiff suffered losses only in Period 1 (July 24, 1974 to and including September 30, 1974), and none in the Period 2 (October 1, 1974 to and including November 17, 1974), enter said amount of Period 1 shipping losses which are contained on Line A of this Appendix in Special Interrogatory 4A.

However, if you find that Plaintiff suffered losses in the Period 2 (October 1, 1974 to and including November 17, 1974), you must determine the additional following facts outlined in the Period 2 instructions.

## PERIOD TWO INSTRUCTIONS

Again, you must proceed to determine to what extent Plaintiff's use of available inventory offset Plaintiff's production loss, if any. If you find that the Plaintiff did in fact suffer a shipping loss as a direct result of the train collision during this Period 2 (October 1, 1974 to and including November 17, 1974), you must proceed to determine the value of the lost shipments for this second period.

For this second period, October 1, 1974, to and including November 17, 1974, Plaintiff contends that the value of each ton lost is in the amount of $12.66 per ton, for the reason that a certain expansion contract was in effect during said period of time (October 1, 1974 to and including November 17, 1974).

The Defendant, relying on Plaintiff's Exhibit Number 154, has contended that the expansion shipments had been cancelled and that the price set forth in the initial contract for this period of time (October 1, 1974 to and including November 17, 1974), in the amount of $10.79 per ton, is the proper value for each ton of shipment lost during Period 2 (October 1, 1974 to and including November 17, 1974).

It is for you, the jury, to determine in light of all the evidence presented, whether the value of the lost tonnage, if any, during this second period of time (October 1, 1974 to and including November 17, 1974), is $10.79 per ton or $12.66 per ton.

You are reminded that the Plaintiff CBG has the burden of proving the necessary facts to support its claim by a fair preponderance of the evidence.

After you determine the value of the lost tonnage, if any, during this Period 2 (October 1, 1974 to and including November 17, 1974), that is, either $10.79 per ton or $12.66 per ton, you must multiply the lost tonnage by the appropriate amount found by you as hereinabove described.

This figure, if any, should be entered on this Appendix, Line B.

| | | |
|---|---|---|
| VALUE OF LOST SHIPPING SUFFERED BY CBG, during Period 1 (July 24, 1974 to and including September 30, 1974) | Line A | $_____ |
| VALUE OF LOST SHIPPING SUFFERED BY CBG during Period 2 (October 1, 1974 to and including November 17, 1974) | Line B | $_____ |
| ENTER SUM OF LINE A AND LINE B | Total C | $_____ |

Enter the amount of dollar loss contained in "Total C" on Line 4A of the Special Interrogatories, and proceed to answer Special Interrogatories 4B and 4C and 4D as instructed, using Appendix 2 for question 4C. After you complete question 4D, proceed to answer question 5.

## APPENDIX 2

The information contained in Appendix 2 is to be used in answering Special Interrogatory 4C.

On the evidence presented in this case, you are instructed that the normal charges and expenses which CBG did not incur for each metric ton it failed to ship as a direct result of the business interruption loss, and which must therefore be subtracted from the reduction in gross earnings, are set forth below as follows, by fiscal year.

Expenses for loss of shipments which occurred in the period July 24, 1974 to and including September 30, 1974, must be computed by reference to Table 1, Fiscal Year 1974.

Expenses for the loss of shipments, if any, which occurred in the period October 1, 1974, to and including November 17, 1974, must be computed by reference to Table 2, Fiscal Year 1975.

## TABLE 1—NORMAL EXPENSES, FISCAL YEAR 1974

In order to determine normal expenses for Fiscal Year 1974, it has been stipulated by the parties that the composite expense figure of $.5553 per ton should be used.

To determine the amount of Normal Expenses for Fiscal Year 1974, multiply the total number of tons of lost shipping by the figure $.5553 per ton:

$$\text{Tons of lost shipping} \times \$.5553 \text{ per ton} = \frac{\rule{2cm}{0.4pt}}{\text{Total Fiscal Year 1974}}$$

Complete Table 2 only if you found a loss of shipments for the period October 1, 1974, to and including November 17, 1974.

## TABLE 2—NORMAL EXPENSES, FISCAL YEAR 1975

Complete Table 2 only if you found a loss of shipments for the period October 1, 1974, to and including November 17, 1974.

In order to determine normal expenses for Fiscal Year 1975, it has been stipulated by the parties that the composite expense figure of $.8746 per ton should be used.

To determine the amount of Normal Expenses for Fiscal Year 1975, multiply the total number of tons of lost shipping by the figure $.8746 per ton.

$$\text{Tons of lost shipping} \times \$.8746 \text{ per ton} = \frac{\rule{2cm}{0.4pt}}{\text{Total Fiscal Year 1975}}$$

Combine the totals of Table 1 and Table 2, and insert the total amount in Special Interrogatory 4C.

TOTAL, Table 1 —————
TOTAL, Table 2 —————
TOTAL to be inserted in Special Interrogatory 4C —————

### EXHIBIT B

CBG v. INA C.A. No. 75–1568

*Plaintiff's Proposed Jury Instructions*

28. Paragraph 4 of the insurance policy provides as follows:

4. RESUMPTION OF OPERATIONS: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business,

(a) by complete or partial resumption of operation of the property herein described, whether damaged or not, or

(b) by making use of other property at the location(s) described herein or elsewhere, or,

(c) by making use of stock (raw, in process or finished) at the location(s) described herein or elsewhere,

such reduction shall be taken into account in arriving at the amount of loss hereunder.

Furthermore, paragraph 3 of the insurance policy provides that

Due consideration shall be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately preceding the loss.

The two sections of the insurance contract impose an obligation upon CBG to in good faith use its inventory to reduce the loss, but that due consideration must be given to the resumption of CBG's business. Thus, CBG is obligated to use its inventory in a commercially reasonable manner so as to reduce the loss and to enable itself to resume operations with the same quality of service which existed immediately prior to the train collision.

[Authority Follows]

Authority: *E.g., Beautytuft, Inc. v. Factory Insurance Association,* 431 F.2d 1122 (6th Cir.1970); *Northwestern States Portland Cement Co. v. Hartford Fire Insurance Co.,* 360 F.2d 531 (8th Cir. 1966); *National Union Fire Insurance Company v. Anderson-Prichard Oil Corp.,* 141 F.2d 443 (10th Cir.1944); *Steel Products Company, Inc. v. Millers National Insurance Company,* 209 N.W.2d 32 (Iowa 1973).