In re Joseph BOVA, Debtor.

Bankruptcy No. 96–15805DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 14, 1997.

See also 205 B.R. 467.

Geri H. Gallagher, Haverford, PA, John R. O'Rourke, Jr., McTighe, Weiss, O'Rourke & Milner, P.C., Norristown, PA, for Debtor.

William G. Blasdel, Jr., Philadelphia, PA, pro se.

Edward Sparkman, Philadelphia, PA, Chapter 13 Standing Trustee.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

The instant contested matter is an objection ("the Objection") of JOSEPH BOVA ("the Debtor") to the Proof of Claim ("the Claim") filed in his bankruptcy case by his former attorney, William G. Blasdel, Jr., Esquire ("Blasdel"), in the amount of $250,-844.30, $100,844.30 of which is designated as "secured." The Claim is based upon certain issues which have been the subject of considerable state court litigation between the parties.

We conclude that a state-court judgment obtained against the Debtor by Blasdel cannot be accorded *res judicata* or collateral estoppel effect because the judgment has been opened and is therefore not final and because the judgment was not the result of a determination on the merits. When we reach the merits of the Claim apart from the judgment, we find that Blasdel has not been able to articulate reasonable bases for the Claim, much less prove the validity of any causes of action against the Debtor by a preponderance of the evidence. Accordingly, we will disallow the Claim.

### B. FACTS AND PROCEDURAL HISTORY

The Debtor filed the underlying individual Chapter 13 bankruptcy case *pro se* on June 25, 1996. The history of this case through the date of our former Opinion of February 26, 1997, arising out of this case, reported at 205 B.R. 467 ("*Bova I*"), is set forth in that Opinion, mostly *id.* at 470–71. In that Opinion, we held that the Debtor could avoid Blasdel's garnishment lien against certain insurance proceeds, *id.* at 472–75, 478–79, and that the Debtor was entitled to exempt those

proceeds. *Id.* at 475–78. Per the parties' agreement, we also granted them both relief 'from the automatic stay to litigate the Debtor's renewed petition to open a judgment entered in favor of Blasdel against the Debtor in a case docketed at October Term 1990, No. 2623, in the Philadelphia Court of Common Pleas ("the 1990 C.P. Case"). *Id.* at 471, 479.

Blasdel filed the Claim at issue on September 26, 1996. Attached to the Claim is a Praecipe filed by Blasdel in the 1990 C.P. Case requesting assessment damages on Counts I and II of the Complaint ("the Complaint") at $100,884.30, dated May 23, 1996. The itemization in the Praecipe supporting this figure reads as follows:

| | |
|---|---:|
| Amount of principal, Count I | $ 22,310.00 |
| Interest on Count I from July 17, 1987 | 11,824.30 |
| Amount of principal, Count II | 50,000.00 |
| Interest on Count II from October 11, 1990 | 16,750.00 |
| Total damages under Count I & II | $100,884.30 |

The assessment is executed as a court order by a court clerk for the Prothonotary.

In the Objection, filed on March 27, 1997, the Debtor asserts that he owes no money to Blasdel. As to Count I, he contends that this Claim represents a demand for services for which Blasdel was already paid. Count II of the Complaint is contested because it is based on a prospective contingent fee in a matter which other counsel resolved.

The Objection was first listed for a hearing on May 6, 1997, with a confirmation hearing continued from April 1, 1997. Since confirmation was dependent on resolution of the Objection, both matters were continued to June 3, 1997, and then, on a must-be-tried basis, to July 10, 1997. After the July 10 hearing, the parties were accorded until August 7, 1997, to submit briefs, and the confirmation hearing was continued until August 26, 1997.

Testifying at the hearing, in addition to the Debtor and Blasdel, was Thomas L. Gowen, Esquire, a Montgomery County, PA. attorney who represented the Debtor in a personal injury claim arising from a 1976 automobile accident [1] and who was qualified as an expert to analyze the Debtor's claims for personal injury protection ("PIP") on account of lost wages and medical bills arising out of the 1976 accident as well as his personal injury claims.

Gowen testified that Blasdel attempted to collect a fifty (50%) percent contingency fee from the Debtor's first party PIP claim of $19,314.00. Such a claim, according to Gowen's unrebutted testimony on this point, is illegal under the Pennsylvania No Fault Insurance law. *See* 75 Pa.C.S. § 1798(a). Compensation for representation in such matters was said to be confined to allowances by the court on itemized fee applications when an insurer has denied claims with "no reasonable foundation" to do so. *See* 75 Pa. C.S. § 1798(b).

Gowen next commented upon a personal injury action commenced by Blasdel on the Debtor's behalf arising out of the 1976 accident. This matter was referred to Gowen after an apparent breakdown in the Debtor's relationship with Blasdel. Gowen stated that he had pointed out to Blasdel that his taking a contingency fee on account of the PIP claim was illegal, whereupon Blasdel claimed for the first time that the fee of $9,928.45 was for representation of the Debtor in a domestic relations dispute. Gowen further testified that, when he received Blasdel's file in reference to all of the Debtor's claims related to the 1976 accident, he ascertained that Blasdel had done very little useful preparatory work on either the PIP claim or the personal injury claim. Gowen contended that, through almost exclusively his own efforts, he was able to settle the matter for the policy limit of $50,000 and received a thirty-five (35%) percent contingency fee.

---

1. This accident preceded the 1985 automobile accident referenced in *Bova I*. The litigation discussed by Gowen arose solely from the earlier 1976 accident. The Debtor suffered head injuries in both accidents impairing his cognitive powers. The first party insurers involved in the 1976 claim were identified as "Aetna" and "Hartford," not Nationwide Insurance Company, the Debtor's claim against which resulted in the $35,000 PIP recovery to the Debtor. Blasdel's garnishment of that $35,000 was at issue in *Bova I.*

On the basis of Gowen's assessment of Blasdel's actions as improper, the Debtor filed two disciplinary complaints and, ultimately, two lawsuits against Blasdel to recover the fees paid allegedly illegally paid to Blasdel on account of the PIP Claim. The Debtor's counsel in this litigation was Neil A. Jokelson, Esquire. The first lawsuit, filed in 1989, was apparently dismissed because the Debtor failed to respond to certain discovery. The second lawsuit, possibly filed by Jokelson to rectify his error in allowing a dismissal of the first case, was apparently filed without the knowledge of the Debtor, shortly after the filing of the 1990 C.P. Case by Blasdel. The said Case was instituted against Jokelson and his firm and the Debtor, and is described in more detail at pages 806–08 *infra*.

On July 15, 1994, an order was entered in the 1990 C.P. Case approving a stipulation whereby Jokelson and his firm were dismissed as parties and the action was to proceed against the debtor by separate counsel or *pro se*. Blasdel concedes that the Debtor was not a party to this stipulation and may have been unaware of it. The Debtor testified that he was indeed unaware of the stipulation until after it was approved by the court and that he was unable to afford replacement counsel or effectively represent himself.

The second lawsuit brought by the Debtor and the disciplinary complaints instituted against Blasdel by the Debtor were all apparently ultimately dismissed. The record contains no decision reflecting these determinations. Blasdel contends that he was merely informed orally that the disciplinary board would not impose any punishment against him on these complaints. He asserts, in a post-trial brief, that the remaining piece of litigation against him was dismissed by the

granting of a summary judgment motion during a hearing in which the Debtor apparently appeared *pro se* on November 1, 1994.

Most of the testimony and documents of record concern the 1990 C.P. Case. It has had a tortuous procedural history, which is not entirely explained by the docket entries and documents of record placed into evidence in this court. As the Debtor pointed out in his post-trial admission, there is an entry of April 18, 1991, which appears inconsistent with many later docket entries in the Case, stating that certain preliminary objections were sustained and that the complaint was dismissed with prejudice.

For example, that entry is inconsistent with the next docket entry, dated April 21, 1994, a motion of Blasdel for judgment on the pleadings in his favor. The docket entries thereafter tell us that the plaintiff's motion for judgment on the pleadings was granted on June 24, 1994, another entry irreconcilable with the April 19, 1991, entry.[2] The April 24, 1994, order included a judgment against Jokelson and his firm, which appear to have motivated Jokelson's desire to stipulate with Blasdel in July 1994 that he and his firm would be dismissed from the case.

The next significant developments in the 1990 C.P. Case are a series of Orders entered in January 1996 by the Honorable Eugene E.J. Maier. These orders appear to have resulted from certain motions alleging the failure of the Debtor to provide adequate responses to certain discovery. We agree with the Debtor that the manner of service and means of disposition of these motions, whether after hearings, arguments, briefing, or nothing, is unclear. They included numerous sanctions against the Debtor, most notably precluding him from presenting evidence

---

**2.** Blasdel makes no response to the Debtor's mention, in his post-trial brief, regarding the effect of the April 19, 1991, entry except to state that the Debtor has quoted unspecified litigation history from the docket rather that from the official record of the case in his brief. We note that the only records from the 1990 C.P. Case before this court are the docket entries and certain selected pleadings. Although the later

pleadings in the Case are so clearly inconsistent with the April 19, 1991, docket entry as to render this entry aberrational, nevertheless this entry is there. The presence of this entry, if nothing else, reflects the confusion that pervades many of the proceedings in the 1990 C.P. Case and contribute to our reluctance to accord binding effect to the orders entered therein.

at trial, per a January 31, 1996, order of Judge Maier.

The next series of orders were entered in May 1996, and again the manner of service and means of disposition are unclear. On May 10, 1996, the Honorable Jane C. Greenspan entered an order entering a judgment, with no reference to any particular Counts of the Complaint, against the Debtor for failure to respond to discovery, with damages to be assessed by the Prothonotary or after a hearing. On May 16, 1996, the Honorable Joseph D. O'Keefe entered an order granting Blasdel a judgment of $22,310.00, plus interest from July 17, 1987, on Count I of the Complaint, and a judgment on Counts II, III, and IV of the Complaint, with damages to be assessed as appropriate. On May 23, 1996, Blasdel's praecipe for damages in the amounts set forth at page 805 *supra* was signed by the Prothonotary clerk, fixing the damages in Count I and II indicated there.

Near the conclusion of the July 10 hearing, we examined the Complaint and attempted to ascertain, by questioning Blasdel, the substantive bases of his claims in the 1990 C.P. Case. Count I asserts that Blasdel expended 194 hours of services in connection with the Debtor's PIP claim, entitling him to $22,310.00. Count II alleges that Blasdel demanded $100,000 in the Debtor's personal injury claim and would have received a $50,000 contingent fee in addition to the $9,928.45 fee which he attributes to both the accident litigation and the Debtor's domestic disputes, but for the Debtor's refusal to accept this sum in settlement. Count III is a claim solely against Jokelson and his firm for instituting the first suit of the Debtor against Blasdel in bad faith. Count IV is a claim against all of the defendants for malicious prosecution of the second suit of the Debtor against Blasdel.

With respect to both Counts I and II, Blasdel described his claims, in response to our questions, as attempts to recover fees which he would have been able to obtain had the Debtor not interfered with his "rights" to pursue same. As to Counts III and IV, he admitted that he perceived Jokelson as the primary transgressor.

With respect to Count I, Gowen testified that Blasdel had in fact illegally received $9,928.45 and that his file documented little work, far less than 194 hours. Gowen characterized the 194–hour time expenditure as totally unreasonable in such a case. On this point, Blasdel admitted that he had no timesheets to support this claim, claiming that he had discarded same.

With respect to Count II, Gowen testified that any recovery in excess of the $50,000 policy limit was impossible and that he himself had done virtually all of the useful work in the Debtor's case necessary to make that recovery. Gowen further testified that, after he had taken his own thirty-five (35%) percent contingency from the $50,000 recovery, he became involved in a dispute with Blasdel regarding his rights to a share of the fee. Gowen testified that his offer to Blasdel to resolve whether Blasdel was entitled to any portion of this recovery before a bar association fee-dispute committee was rejected. Gowen thus concluded that Blasdel was entitled to no recovery from this claim, and in no event the $50,000 which constituted the Debtor's entire maximum recovery.

In the course of the hearing, the court advised Blasdel that it considered all of his claims to be "far-fetched." We also noted that it appeared unfair to stipulate with his noticeably-impaired client's counsel to have him withdraw and then utilize discovery sanctions as a basis for obtaining judgments against his then-*pro se* client. As to the legal justification for obtaining his $100,000 + judgment in these circumstances, Blasdel stated as follows:

> Now, do I expect Mr. Bova to pay it all? I haven't, I never have. Everything that I've done has been a request for some type of compromise to go after Neil Jokelson, to hold him liable. Transcript of Proceedings, at 161.

These circumstances did not motivate Blasdel to fail to defend the Claim to its full extent in this Court.

Although we had granted both of the parties relief from the automatic stay to litigate the Debtor's motion to open the judgment in the 1990 C.P. case on February 26, 1997,[3] we were prepared to decide the Objection without the benefit of a potentially long-forthcoming ruling on that motion. Fortuitously, after the parties had filed their initial post-hearing submissions, the Honorable Pamela P. Cohen entered the following order in the Case:

> AND NOW, the 28 day of July, 1997, upon consideration of the attached Petition to Open Judgment, it is hereby ORDERED and DECREED that the judgment in the above captioned case is opened.

Undaunted by this critical adverse ruling, Blasdel argues, based partially upon the identity of Judge Maier as the judge who has decided matters in this case on the motion's Cover Sheet and partially upon the fact that only "the" (singular) judgment was opened, that the May 1996 Orders of Judges Greenspan and O'Keefe are unaffected by this order. This is an unlikely interpretation of Judge Cohen's Order. Our review of the motion indicates that the Debtor, per O'Rourke, although making a few apparently erroneous references to a "summary judgment" order in the motion, clearly raised, in the general text of the motion, the issue of the general validity of all of the orders entered in this case which could be considered as a judgment in the 1990 C.P. Case.

We further observe that, ordinarily a lawsuit yields only one judgment. Although the entry of orders by several different judges in this case, as well as many of the docket entries, undoubtedly create a good deal of confusion, *see* pages 806–07 *supra,* it is apparent to us that the Debtor sought, per O'Rourke, sought, and Judge Cohen intended to grant to him, relief from all and any orders which, separately or taken together, might be construed as a judgment in the Case.[4]

## C. DISCUSSION

### 1. The 1990 C.P. Case Judgment(s) Do Not Preclude the Debtor from Successfully Objecting to Blasdel's Claim.

Blasdel relies heavily upon our decision in *In re Kovalchick,* 175 B.R. 863, 871–73 (Bankr.E.D.Pa.1994), in contending that *res judicata* and/or collateral estoppel arising from the 1990 C.P. Case orders bar the Objection. *Kovalchick* involved, *inter alia,* objections of the debtors to claims based upon state court judgments which had been entered in 1983, and had been the subject of

---

**3.** The Debtor was represented in this filing by separate counsel, John R. O'Rourke, Jr., Esquire. Believing that O'Rourke's status might be properly classified as that of special counsel to the Trustee, we included, in our order of July 11, 1997, a directive that any applications to appoint him as the Trustee's special counsel be filed forthwith and that he receive no further compensation in addition to $800 already reportedly received until fee applications were granted. An application to appoint O'Rourke as his own special counsel *nunc pro tunc* was filed by the Debtor and we asked the Debtor to notice same to all interested parties. On further reflection, we believe that O'Rourke could be considered as counsel for the Debtor who need not be appointed, *see In re Fricker,* 131 B.R. 932, 939–40 (Bankr. E.D.Pa.1991), since the Trustee is not and need not be a party to the Objection. We do request that O'Rourke promptly file any fee application seeking any compensation in excess of $500 in connection with post-petition legal services on behalf of the Debtor. *See id.* at 941.

**4.** We note that, on August 13, 1997, Blasdel submitted an unsolicited "Response Brief," *but see In re Jungkurth,* 74 B.R. 323, 325–26 (Bankr. E.D.Pa.1987), *aff'd sub nom. Jungkurth v. Eastern Financial Services, Inc.,* 87 B.R. 333 (E.D.Pa. 1988) (unsolicited reply briefs are strongly disfavored), stating that, at an argument on a discovery motion in the Case on August 8, 1997, Judge Maier made certain remarks indicating that he believed that Judge Cohen's order was invalid because she could not reconsider another judge's order. Needless to say, such statements (if made) have no legal effect. We also must question whether such statements *were* made, because these statements would attribute to Judge Maier comments on another judge's ruling, the very irregularity with which he was allegedly charging Judge Cohen. In any event, we find Judge Cohens order to be quite clear in its meaning on its face, *i.e.,* it opened any judgment(s) against the Debtor which Blasdel might have.

numerous pre- and post-bankruptcy appeals over a ten-year period. *Id.* at 866–68.

At the time of our *Kovalchick* decision, a state court action challenging the judgments on the ground that they were fraudulently entered had been dismissed and, after an unsuccessful Superior Court appeal, was the subject of a petition for a further appeal to the Pennsylvania Supreme Court. *Id.* at 868. These proceedings were preceded by several unsuccessful direct attacks on the judgments which were rebuffed by the state trial and appellate courts. *Id.* In rejecting the *Kovalchick* debtors' arguments that they were not bound by the state court judgments, we held as follows, *id.* at 872:

> *Res judicata,* or claim preclusion, prevents a party from re-litigating a matter which has already been considered on the merits and finally decided. Collateral estoppel, or issue preclusion, prevents a party from re-litigating a discrete issue in a subsequent proceeding when that same issue has already been litigated and resolved in a prior suit. *See, e.g., Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988); and *In re Levitt,* 18 B.R. 598, 601 (Bankr.E.D.Pa. 1982)....
>
> The doctrine of collateral estoppel will prevent a party from litigating an issue when (1) the issue is identical to one decided in a prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party to the prior adjudication....

Two distinctions which we believe are significant exist between the instant judgment or judgments entered in the 1990 C.P. Case and the state court judgments at issue in *Kovalchick.* First, the judgments in issue are, particularly after Judge Cohen's Order of July 28, 1997, no longer "final." Second, it does not appear that the merits of Blasdel's claims against the Debtor were ever fully litigated or decided in the course of the 1990 C.P. Case.

Under pertinent Pennsylvania law, it is well-established that a judgment has preclusive effect only if it is final. See *Creighan v. City of Pittsburgh,* 389 Pa. 569, 574, 132 A.2d 867, 870 (1957); *O'Brien v. O'Brien,* 362 Pa. 66, 66 A.2d 309 (1949); *John McShain, Inc. v. Cessna Aircraft Co.,* 72 D. & C.2d 405, 407–09 (Pa.Com.Pl.1975) (CAVANAUGH, J.); and 10 STANDARD PA.PRAC.2d 390–91 (1996). *Cf. Gonzales v. Gonzales,* 83 F.Supp. 496, 500 (E.D.Pa.1949) (apparently applying federal law). "To be final, ... the judgment or order must end the litigation, dispose of the entire case or effectively put the litigant out of court." *Popowsky v. Pennsylvania Public Utility Comm'n,* 166 Pa.Cmwlth. 690, 696–97, 647 A.2d 302, 305 (1994). The mere pendency of a motion for a new trial, *see McShain, supra,* or the status of a judgment as subject to modification, *see Gonzales, supra,* 83 F.Supp. at 500, may be sufficient to preclude finality.

Prior to the entry of the Order of July 28, 1997, the finality of the judgment(s) in issue was open to question. These Orders entered purported to resolve only certain of the pertinent issues raised in the Complaint. It was rather clear that they did not put the litigants out of court. Furthermore, the orders, such as they were, were at that point subject to the Debtor's motion to open the judgment.

However, it is clear that the entry of the July 28, 1997, order destroyed whatever finality the "judgment" orders entered to date had. *See Baird v. Aluminum Seal Co.,* 250 F.2d 595, 602 (3d Cir.1957); *Allegheny County v. Maryland Casualty Co.,* 132 F.2d 894, 896–97 (1943); *Poelcher v. Zink,* 375 Pa. 539, 542, 101 A.2d 628, 629–30 (1954); and *Lukacko v. Mucerino,* 192 Pa.Super. 4, 7, 159 A.2d 235, 236–37 (1960). Therefore, upon the entry of the July 28, 1997, order by Judge Cohen, the judgment(s) previously obtained by Blasdel lost whatever *res judicata* or collateral estoppel effect it (they) had.

Blasdel, in his most recent submission, indicates that he will file motions to have Judge Cohen reconsider her decision or appeal her decision. Such further proceedings

would, in our view, only underscore the lack of finality of any orders entered in the 1990 C.P. Case to date.

■ Second, as stated in *Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329, 337 (3d Cir.1985),

> Under [Pennsylvania] state law both *res judicata* and collateral estoppel require an identify of the issues involved, *Safeguard Mutual Insurance Co. v. Williams*, 463 Pa. 567, 574, 345 A.2d 664, 668–69 (1975), and the determination must have been essential to the outcome of the prior action. *Philadelphia Marine Trade Association v. International Longshoremen's Association*, 453 Pa. 43, 46, 308 A.2d 98, 100 (1973).

*See also, e.g., Williams v. Murdoch*, 330 F.2d 745, 751–52 (3d Cir.1964); *Safeguard, supra*, 463 Pa. at 574, 345 A.2d at 668; *Lebeau v. Lebeau*, 258 Pa.Super. 519, 525–27, 393 A.2d 480, 482–84 (1979); *Martin v. Poole*, 232 Pa.Super. 263, 268–70, 336 A.2d 363, 366 (1975); and *GPU Industrial Intervenors v. Pennsylvania Public Utility Comm'n*, 156 Pa.Cmwlth. 626, 636–37, 628 A.2d 1187, 1192–93 (1993).

The judgment(s) at issue were apparently entered against the Debtor only as a sanction in light of his alleged refusal to adhere to discovery orders. Again putting aside the issues of whether the judgment(s) came to be properly entered, after the requisite notice and hearing, concerning which we must express our doubts, there is no doubt that these were not judgments on the merits. Federal courts are very reluctant to accord *res judicata* or collateral estoppel effect to judgments which have been previously entered by default or confession, *see In re Graves*, 33 F.3d 242, 248 (3d Cir.1994), or as a sanction for the failure of a litigant to comply with a discovery order. *See In re Pancake*, 106 F.3d 1242, 1244 (5th Cir.1997).

The issue critical to the Objection at issue, the merits of Blasdel's claims against the Debtor, was hence never "actually litigated" in the 1990 C.P. Case. *Compare Graves, su-*

*pra*, 33 F.3d at 248. Therefore, it would be inappropriate to bar the Debtor from contesting the merits of the Claim on the basis of *res judicata* or collateral estoppel. We note that this element of the orders entered in the Case precludes their *res judicata* or collateral estoppel effect, irrespective of whether Judge Cohen's order was valid, as we believe it must be considered unless vacated or successfully appealed.

■ We must further express our distaste for the lack of equities in Blasdel's favor. As we note at pages 811–12 *infra*, his claims had little apparent merit. Although he is an attorney and he is intimately familiar with the underlying facts, the record, and the pleadings in the 1990 C.P. Case, when asked the straightforward question of the underlying merits of his claims against the Debtor, Blasdel was unable to answer in anything close to a convincing manner. He conceded, in the passage quoted at page 807 *supra*, that an element of gamesmanship was involved in his actions. We suspect that the element of retribution against a difficult former client who had filed disciplinary complaints against him was also present.

Furthermore, after effectively stripping the Debtor, known to be suffering from mental disorders, of his counsel, Blasdel took procedural measures which appeared calculated not to obtain a decision on the merits, but to obtain a decision by legal maneuvers against a party whom he well knew to be a mentally-impaired layman. *Cf. Hostler v. Gilliam*, 58 Del.Co.Rpts. 563 (Del.Co.C.P. 1970) (age, intelligence, and indigency of defendant considered in opening a judgment against him). It is true that attorneys, notably Arthur L. Gutkin, Esquire, at some undetermined period(s) between 1994 and 1996, and more recently O'Rourke, appeared for the Debtor. However, it is unclear what pleadings or services Gutkin provided. Thus, in contrast to the facts of the *Gonzales* case, where the court found all of the equities on the side of the party in whose favor it was unable to apply *res judicata*, 83 F.Supp. at 500, we find few, if any, equities in favor of Blasdel here.

We therefore have little hesitation and find little contrary moral suasion in declining Blasdel's efforts to assert *res judicata* or collateral estoppel from the 1990 C.P. Case orders in support of his Claim against the Debtor. We decline to do so on equitable grounds, as well as on firm legal grounds.

2. *Blasdel Has Failed to Prove the Validity of Any Claim Against the Debtor by the Requisite Preponderance of the Evidence in This Record.*

As our observations of the merits of Blasdel's underlying claims at pages 806–08 *supra,* portend, we have little difficulty in concluding that, once the judgment(s) in the 1990 C.P. Case is (are) rendered ineffectual to bar the Debtor from defending against the Claim, the Claim cannot be sustained on its merits.

The relative burdens of proof of the parties to proof of claim litigation is set forth in *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173 (3d Cir.1992), as follows:

> If the *objector* produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. *See In re WHET, Inc.,* 33 B.R. 424, 437 (Bankr.D.Mass.1983). The burden of persuasion is always on the claimant. *[In re] Holm,* 931 F.2d [620,]at 623 [ (9th Cir. 1991) ], (quoting *Collier* § 502.02, at 502– 22); *[In re] Windsor Communications [Group, Inc.],* 45 B.R. [770,] at 773 [ (Bankr.E.D.Pa.1985) ].

*See also In re Jordan,* 91 B.R. 673, 683 (Bankr.E.D.Pa.1988) ("once an objector raises an objection to a claim and provides any evidence tending to dispute a claim, 'the claimant will prevail only in the amount that it would be awarded at a trial or hearing, in which the burden of proving its case by a preponderance of the evidence [is] upon the claimant.') *[In re] Lewis,* ... 80 B.R. [39,] at 41 [ (Bankr.E.D.Pa.1987) ]."

The testimony of the Debtor and Gowen, an expert witness, who, relative to Blasdel appearing *pro se,* was disinterested, easily constituted sufficient evidence to negate facts pertinent to the validity of the Claim. Indeed, Gowen testified that Count I was based on a claim for compensation in prosecuting the Debtor's PIP claim, for which Blasdel had illegally been already overpaid. Gowen further convincingly testified that Blasdel's attempt to attribute his receipt of his prior fee to his representation of the Debtor in an unrelated domestic relations dispute was a fabrication, as the amount received was approximately one-half of the Debtor's PIP recovery. This conclusion is supported by the Debtor's testimony and documentation indicating that he separately paid Blasdel a total of $802 separately for representation in the domestic relations matter.

Gowen further testified that the Count II claim was totally without merit. Specifically, he testified that a $100,000 settlement within the defendant's policy limits was unattainable because such a settlement required an assumption that the Debtor could recover $50,-000 from his wife's coverage as well as $50,-000 from the other driver's coverage. Gowen noted that, at that time, spousal immunity barred a claim of the Debtor against his wife's coverage. Finally, Gowen stated that Blasdel's file provided no assistance to Gowen's successful litigation of the case, in which he ultimately obtained the $50,000 which was in fact the other driver's policy limit.

Blasdel's rejoinders, even when we gave him a full opportunity to address the merits of his claims, and then upon his being made aware by this court that his explanations made those claims appear "far-fetched," were extremely weak. The claims were, in Blasdel's own words, based on his hopes of receiving contingent fees upon what he believed were maximum potential recoveries on the Debtor's claims. Gowen's testimony was quite convincing in establishing that these hopes were unrealistic.

Blasdel was faced with the initial burden of "present[ing] admissible evidence in support of his claim and that he is entitled to relief."

*In re Volpi*, 1990 WL 110904, at *4 (Bankr. E.D.Pa. August 2, 1990), citing *Compagnie Des Bauxites De Guinee v. Insurance Co. of North America*, 551 F.Supp. 1239, 1242–43 (W.D.Pa.1982); *In re Flick*, 14 B.R. 912, 914–15 (Bankr.E.D.Pa.1981); *In re Fricker*, [116 B.R. 431, 437–438 (Bankr.E.D.Pa.1990) ]; *Lewis, supra*, 80 B.R. at 41; *Wagner v. Somerset County Memorial Park, Inc.*, 372 Pa. 338, 341–42, 93 A.2d 440, 442 (1953); and *Se–Ling Hosiery, Inc. v. Margulies*, 364 Pa. 45, 49–51, 70 A.2d 854, 855–57 (1950).

If the burden of proving the liability of the Debtor to him were met, he then was further confronted with "the burden of establishing damages with reasonable certainty by proper evidence." *In re 220 Partnership*, 1995 WL 538993, at *9 (Bankr.E.D.Pa. Sept.8, 1995), citing *In re Repco Products Corp.*, 100 B.R. 184, 198 (Bankr.E.D.Pa.), *aff'd*, C.A. No. 89–5514 (E.D.Pa. Sept. 8, 1989); *Bolus v. United Penn Bank*, 363 Pa.Super. 247, 268, 525 A.2d 1215, 1225–26 (1987); and *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 118, 464 A.2d 1243, 1257 (1983).

Blasdel has not proven that the Debtor is liable to him for any additional prospective compensation arising from his PIP claims in addition to the $9,928.45 already apparently illegally recovered by him, or any compensation at all, in consideration for his services in connection with the Debtor's personal injury claims. Moreover, even were we to find potential liability of the Debtor to Blasdel in some amount on these claims, there is no evidence of record to support the amounts claimed or any other sum. Blasdel produced no time records to support his PIP-related claim.

Similarly, no evidence was produced to support the likelihood of a $100,000 personal injury recovery by the Debtor, or to establish that Blasdel could have recovered any sum on the basis of his services performed on behalf of the Debtor as of that date. There is also no evidence to support any right of Blasdel to make a claim against the Debtor for his full compensation under the parties' contingent fee agreement upon the Debtor's termination of that agreement and his success in litigating this claim with replacement counsel. The only recovery allowable would be in the nature of *quantum meruit*, and the record does not support any claim for Blasdel under this theory. *See Powers v. Rich*, 184 Pa. 325, 333, 39 A. 62, 62–63 (1898); and *Fowkes v. Shoemaker*, 443 Pa.Super. 343, 348, 661 A.2d 877, 879 (1995), *appeal denied*, 544 Pa. 609, 674 A.2d 1072 (1996). Thus, intuitively, we are inclined to accept Gowen's assessment of all of Blasdel's claims as improper or excessive.

We also note that there is no evidence to support a $150,000 claim against the Debtor pursuant to Count IV of the 1990 C.P. Case Complaint. As Blasdel conceded, the primary target of these claims was intended to be Jokelson and his firm, not the Debtor. Far from having proven the Debtor's lawsuits against Blasdel malicious and lacking in merit, the present record suggests that the claims had substantial merit and might have succeeded had they been vigorously pursued by Jokelson or some other counsel. In any event, given Gowen's convincing expert testimonial support of the merits of these claims, these claims are in no sense proven to have been put forward with malice, without legal reason, basis, or probable cause, and solely to harass Blasdel. Furthermore, even if liability of the Debtor to Blasdel on Count IV were proven, no basis for fixing the damages at $150,000 or any other sum was presented.

Thus, we conclude that Blasdel had, and failed to meet, the burden of presenting evidence sufficient to support the Debtor's liability to him for damages in the amounts set forth in the Claim or in any other amounts. Therefore, we conclude that Blasdel's Claim must be disallowed in its entirety.

## D. CONCLUSION

An order so providing will be entered.